**Bradley NIGH, Plaintiff,**

v.

**KOONS BUICK PONTIAC GMC, INC. and Household Automotive Finance Corporation, Defendants.**

No. CIV. A. 00–1634–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 20, 2001.

Order Denying Relief From Order, May 2, 2001.

Alexander Hugo Blankingship, Blankingship & Associates, Alexandria, VA, for Plaintiff.

Arthur Marck Schwartzstein, McLean, VA, John Ogelsby Long, III, Feidler Long Kathan, Alexandria, VA, for Defendants.

### *MEMORANDUM OPINION*

LEE, District Judge.

THIS MATTER is before the Court on Defendant Koons Buick Pontiac GMC, Inc.'s Motion for Summary Judgment. The specific issues before the Court are numerous, but basically present the question of whether the Court can conclude as a matter of law that Defendant is entitled to summary judgment on Plaintiff's claims sounding in the Federal Odometer Act, the Truth in Lending Act, the Virginia Consumer Protection Act of 1977, breach of contract, fraud, and conversion.

This case involves an individual consumer's transactions with a major automobile dealership in connection with the purchase of a sports utility vehicle, or "truck." The parties contracted to offset the price of the truck with the consumer's trade-in vehicle and to finance the purchase of the truck through the dealership. The consumer visited the dealership on three separate occasions. On the first visit, a dealership representative discussed the consumer's credit terms with the consumer, filled in a retail sales contract, and then had the consumer sign the contract. The dealership then asked the consumer to return for a second visit because the dealership had not been able to obtain financing on the first contract. On the second visit, the contract presented to the consumer required an additional $2,000 down payment. The consumer objected to the increased down payment, but he signed the contract. The dealership then asked the consumer to return for a third visit, explaining that the dealership had to remove an erroneous charge from the contract. The consumer signed the contract with the removed charge. The consumer never paid the additional $2,000 down payment. Instead, the consumer brought suit against the dealership, alleging that the dealership violated several federal statutes, the laws of contract, and the laws against fraud in connection with the signing of the three sales contracts. Among the consumers claims are that the dealership did not provide the consumer with a copy of his credit terms before he signed the sales contracts so that he could shop for better lending rates; the dealership failed to disclose that the truck had a defective odometer; the dealership made a misrepresentation as to whether the truck had been in an accident; the dealership miscalculated his annual percentage rate, finance charges, amount financed, and sales taxes; the dealer incorrectly transferred title to the truck; and

the dealer charged him for items that he did not receive.

For the reasons stated below, the Court finds most of the consumer's claims to be without merit; however, a small number of claims remain for the trier of fact.

## I. FACTUAL BACKGROUND

Plaintiff Bradley Nigh went to Defendant Koons, Buick, Pontiac, GMC, Inc.'s automobile dealership located in Alexandria, Virginia on February 4, 2000 to buy a vehicle. Nigh met with Koons' salesperson John Sherman about purchasing a 1997 Chevrolet Blazer ("Truck"). When Nigh expressed interest in purchasing the Truck, Mr. Sherman directed Nigh to Koons' finance manager. No Koons representative had disclosed the price of the Truck before Nigh met with the finance manager. The finance manager disclosed the terms of the deal to Nigh and inserted the terms onto a retail installment sales contract ("RISC"). As part of the deal, Nigh was going to trade-in his Dodge Dakota in order to get a decreased price on the Truck. He provided Koons an estimate of $7,500 on the remaining balance on the loan on the Dakota. Also, Nigh was going to permit Koons to arrange financing for the truck. The RISC provided that the sale of the truck was conditioned upon approval by a lender of the terms listed on the RISC. (Compl., Ex. A.) If the RISC was not approved under the terms agreed upon by Nigh and Koons, Nigh could return the Truck, cancel the sale, and get back his down payment. The RISC listed a down payment of $4,000.

With all of the terms in place on the RISC, the finance manager directed Nigh to sign the contract to complete the sale. Nigh signed the contract. Koons did not complete a Buyer's Order as part of the paperwork to settle the purchase transaction. During the settlement of the sales contract, Koons completed Odometer Disclosure Statements ("ODS"). Koons omitted information from the ODS, such as the identity of the person completing the documents and the signature of a Koons representative. Nigh signed all of the documents presented to him and drove the Truck off the lot.

Approximately two weeks later, Koons contacted Nigh and informed him that they had "a better deal." Koons asked Nigh to return to the dealership to sign a new contract. Defendant had been unable to find a lender to finance the transaction on the terms of the February 4, 2000 sales contract ("RISC 1"). Koons drafted new terms and was able to find a lender. Koons presented this new RISC ("RISC 2") to Nigh when he returned to the dealership on February 25, 2000. Koons informed Nigh before he signed RISC 2 that he would have a better interest rate, that his payments would decrease by $70 a month, and that he would have to pay an additional $2,000 down payment. Nigh informed Koons that he did not have $2,000, and that he wanted to just cancel the deal. He asked that his Dodge Dakota be returned. Koons responded that Nigh could not have the Dakota back because Koons sold it. Nigh opted to sign a promissory note obligating him to pay Koons an additional $2,000 rather than be without a vehicle.

Nigh's next contact with Koons was precipitated by a phone call to Nigh's brother. Nigh asserts that his brother informed him that Koons called and said that Nigh needed to return to the dealership to sign a new contract, or else Koons would report the Truck as stolen. Nigh returned to Koons on March 5, 2000, but he did not mention to anyone the issue of reporting the vehicle as stolen. Koons presented new paperwork to Nigh, which indicated a decrease of his monthly payments by $18 a

month. Koons had removed a charge for a "silencer" that had been listed on RISC 2, but that had not been contracted for and had not been installed. Nigh signed the new RISC ("RISC 3"), and again drove the Truck home.

Later, Koons contacted Nigh and informed him that Nigh owed Koons an additional $1,959.73 to pay off the lien on his trade-in vehicle. The amount owed on the Dodge Dakota was in excess of the $7,500 estimate that Nigh provided, and Koons had to pay a repossession and storage charge to regain possession of the Dakota. Nigh has not paid the $1,959.73 or made any payments on the $2,000 promissory note. Nigh sues Koons for the manner in which it conducted the sales transactions for his purchase of the Truck. Koons counterclaims for the amounts owed Koons on the promissory note and owed for the payment on the trade-in lien.

## II. PARTIES' CONTENTIONS

### A. *Plaintiff Nigh*

As an initial matter, Nigh clarifies that he can prove damages without the assistance of an expert. Under the Truth in Lending Act ("TILA") and the Federal Odometer Act ("FOA"), Nigh seeks statutory damages. No expert is necessary to prove the statutory amount. The bases for damages for the Virginia Consumer Protection Act ("VCPA"), breach of contract, fraud, and conversion claims are established by the documents submitted by the parties.

In Count 1 of his Complaint, Nigh alleges several violations of the Federal Odometer Act. *See* 49 U.S.C. §§ 32701 *et seq.* (West 1999 & Supp.2000). Nigh alleges that the Odometer Disclosure Statement was not signed, bears the wrong date, and indicates the wrong mileage. In addition, Nigh asserts that Koons violated the FOA

by failing to document the Truck's mileage on the actual date of sale, February 25, 2000. Nigh also alleges that the Truck's odometer was altered, and that Koons should have disclosed this fact.

In Count 2, Nigh alleges several violations of the Truth in Lending Act with respect to the first sales contract (RISC 1). *See* Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, (commonly known as the Truth in Lending Act), as implemented by Regulation Z, 12 C.F.R. § 226. First, Koons violated TILA by failing to make meaningful and accurate disclosures prior to the consummation of the sales transaction for Truck. *See* 15 U.S.C. § 1601 *et seq.* Second, Koons failed to disclose an increase of the cost of the Truck because of a discount withheld by the lender. Third, Koons failed to disclose that it was collecting a yield spread premium. Fourth, Koons failed to disclose its $289 processing fee as a finance charge. Fifth, Koons failed to indicate that certain figures on the RISC were estimates.

In Count 3, Nigh alleges that Koons violated TILA in several respects as to the second sales contract (RISC 2). Again, Nigh asserts that Koons failed to make timely disclosures prior to consummation of the sales contract, failed to disclose the discount and yield spread premium, and disclosed an inaccurate finance charge with regard to the processing fee. Nigh also claims that Koons improperly calculated the sales tax on RISC 2. In addition, Nigh asserts that Koons charged Nigh $965 on RISC 2 for a "Silencer" that Koons never installed. Nigh argues that these miscalculations changed the amount financed, the finance charge, total number of payments, total sales price, and the annual percentage rate.

In Count 4, Nigh alleges TILA violations with regard to the final sales contract (RISC 3). Again, Nigh claims that Koons

failed to timely disclose the credit terms, miscalculated the finance charge, failed to disclose a discount and yield spread premium, and miscalculated the sales tax. Nigh also asserts that Koons included an "unexplained" charge of $298 on RISC 3.

In Counts 5 through 8, Nigh alleges violations of the Virginia Consumer Protection Act. *See* VA. CODE § 59.1–196 *et seq.* (Michie 1998). Nigh claims that Koons misrepresented the amount of the sales tax on RISCs 2 and 3, the fact that the Truck had not been in an accident, that the $298 processing fee was a mandatory charge, that Koons would pay $7,500 for Nigh's trade-in vehicle, that it had installed a silencer on the Truck, and that Nigh was required to sign RISCs 2 and 3. *See* VA. CODE §§ 59.1–200(5), (7), (14). Nigh further alleges that Koons fraudulently demanded that Nigh submit $1,959.73 for the trade-in vehicle. Nigh also alleges that Koons violated the VCPA by failing to provide a Buyer's Order, *see id.* § 46.2–1530; deceptively disclosing that the Truck had an accurate odometer, *see id.* § 59.1–200(7), (14); and failing to transfer title properly, *see id.* § 46.2–1542.

In Count 9, Nigh claims that Koons breached its contract with Nigh. Nigh asserts that Koons failed to comply with the contract terms, specifying that: 1) the Truck would have an unblemished title, 2) the Truck would have 46,779 actual miles, 3) the sale price would be $21,500, and 4) the down payment for the Truck would be $4,000.

In Count 10, claiming fraud, Nigh alleges that Koons made the following false representations:[1] a) disclosed incorrect mileage on the Odometer Disclosure Statement; b) improperly disclosed the processing fee; c) represented that the processing fee was mandatory; d) misrepresented

that the Truck had not been involved in an accident; e) misrepresented that Koons had installed a silencer; f) charged Nigh an unexplained $298; g) misrepresented that Koons would pay $7,500 for Nigh's trade-in; h) charged Nigh for an extended service contract without discussing said contract with Nigh; i) represented that Koons would report the Truck as stolen if Nigh did not sign RISC 3; and j) fraudulently demanded that Nigh pay $1,959.73 for Nigh's trade-in vehicle, which Koons allegedly sold to another party and failed to pay off as promised.

In Counts 11 and 12, Nigh raises allegations of conversion. In Count 11, Nigh asserts that Koons converted his trade-in, and Nigh asserts the same of the Truck in Count 12. Nigh does not present an argument regarding these conversion claims in his pleadings in opposition to Koons' summary judgment motion.

Finally, in Count 13, Nigh claims that the Household Automotive Finance Corporation must return all money paid by Nigh and rescind the retail installment sales contract which binds the parties. Nigh asserts that the HAFC is the holder of RISC 3 and so is liable for all of Koons' wrongs under the FTC Holder Rule.

## B. *Defendant Koons*

Defendant Koons begins its argument for summary judgment by asserting that Nigh cannot establish damages in this matter. Damages are required elements under the VCPA and for fraud claims. *See* VA. CODE § 59.1–204(A) (VCPA claims); *Henderson v. Henderson*, 255 Va. 122, 495 S.E.2d 496, 499 (1998) (fraud claims). Nigh's sole basis for damages is expert Steven Kendall's report. Mr. Kendall will not testify at trial. Therefore, Koons argues, the Court should grant

---

[1]. Nigh's Complaint itemizes each fraud claim alphabetically. (Compl. ¶ 128.)

Koons summary judgment on Counts 5, 6, 7, 8, and 10 of the Complaint.

Next, Koons argues that it has not violated the Federal Odometer Act. In accordance with the FOA, Koons disclosed "the cumulative mileage registered by the odometer." 49 U.S.C. § 32705(a)(1); *see also* Deposition of Bradley Nigh at 96–98 (indicating that the odometer disclosure statement reflected accurately the mileage reading of the Truck's odometer on February 4, 2000). Koons asserts that Nigh does not dispute that Koons disclosed a reading of 46,779 miles, and that this was the reading that Nigh observed. Koons argues that Nigh provides no evidence or first-hand information that this reading was incorrect. Nigh acknowledges that the odometer has always worked since he has owned the Truck. (Nigh Dep. at 78.) Moreover, even if the odometer was incorrect at the time of purchase, Nigh's claim fails because he has not made a showing that Koons had "an intent to defraud." *See* 49 U.S.C. § 32710; *Compton v. Alta Vista Motors, Inc.*, 2000 Dis. LEXIS 16695, *15 (W.D.Va. Nov. 17, 2000).

Koons further argues, in connection with Counts 2 and 3, that it has not committed any violation under either the first or second retail installment sales contracts (RISCs 1 and 2). Nigh improperly seeks damages under TILA regarding RISCs which were not used in connection with Nigh's purchase. Nigh has not asserted that financing was based on the RISCs. Koons asserts that even if Nigh could base a claim on these unused documents, the claim would fail because TILA provides a safe harbor for corrective errors. *See* 15 U.S.C. § 1640(b). Therefore, Koons argues, the third RISC corrected and replaced the first two. *See, e.g., Hodges v. Koons*, C.A. No. 00–793–A, at 8–9 (E.D.Va. Jan. 3, 2000) (Brinkema, J.) (unpublished Opinion) (holding that a dealer may issue subsequent documents to correct simple errors on earlier documents).

As to Counts 2, 3, and 4, Koons contends that it has not violated TILA. First, Koons contends that Nigh does not support any of his allegations in Count 4 with evidence. Second, Koons argues that there is no basis for recovery on an undisclosed account or yield spread premium because neither was included as part of this transaction. Third, the processing fee was properly disclosed, and was not a finance charge because Koons imposes the fee on all transactions, both cash and credit. *See Alston v. Crown Auto*, 224 F.3d 332, 334 (4th Cir.2000); *Hodges*, C.A. No. 00–793–A, at 10. Fourth, the taxes Koons charged Nigh were properly identified. Fifth, the itemization of the amount financed was correct because Koons only needed to itemize amounts paid to others, not the amounts credited to Nigh's account with the creditor (e.g., a credit for undercoating that Koons was to perform). *See* 12 C.F.R. §§ 226.18(c)(1)(ii), (c)(1)(iii), and (c)(1)(iii) Official Staff Commentary, at 118; *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997). Sixth, Koons complied with TILA by providing written disclosures prior to consummation of the transaction, and Koons did not deprive Nigh of an opportunity to shop for credit. *See* 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(a), (b); *Polk v. Crown Auto. Inc.*, 221 F.3d 691, 692 (4th Cir. 2000); *Cades v. H & R Block, Inc.*, 43 F.3d 869, 876 (4th Cir.1994). Furthermore, the only remedy that Nigh can seek for Koons' alleged failure to timely provide written disclosures is actual damages. *See* 15 U.S.C. §§ 1638(b), 1640; *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 916 (8th Cir.2000). Koons argues that Nigh has not proven actual damages because he has not demonstrated that he would have gotten credit on more favorable terms elsewhere. *See id.; Cirone–Shadow v.*

*Union Nissan of Waukegan,* 955 F.Supp. 938, 943 (N.D.Ill.1997).

Koons also argues that it did not violate the Virginia Consumer Protection Act. First, as stated, Nigh cannot establish damages because Mr. Kendall will not testify. Second, with regard to the odometer, there is no evidence that the reflected mileage was incorrect. Third, with respect to the processing fee, as noted above, it was properly disclosed. Furthermore, the fee is lawful in Virginia. *See* VA. CODE § 46.2–1530(A)(10). In addition, if the processing fee aspect of the consumer transaction is covered by TILA, it is not covered by the VCPA. *See* VA. CODE §§ 59.1–199(A), (C) (stating that VCPA does not apply to aspects of consumer transactions regulated by the Federal Consumer Credit Protection Act [the formal title of the Truth in Lending Act]); *Hodges,* C.A. No. 00–793–A, at 13.

With regard to the provision to Nigh of a Buyer's Order, as required by § 46.2–1530, Koons asserts that Nigh was provided with all the relevant papers and was aware that he could have taken them with him if he wished to do so. (Nigh Dep. at 49, 52.) Moreover, nothing in the VCPA suggests that § 46.2–1530 creates a private right of action. *See Hodges,* C.A. No. 00–793–A, at 15. With regard to Nigh's VCPA allegations concerning the silencer, Koons argues that it should not be liable for the unintentional inclusion of the silencer on the invoice because Koons corrected the mistake. *See* VA. CODE § 59.1–207. Moreover, Koons' correction of the sales contract resulted in lower payments for Nigh, so Nigh suffered no loss; therefore, Nigh cannot maintain an action under the VCPA.

With regard to Koons' alleged misrepresentation that it would pay off Nigh's lien on his trade-in, Koons argues that the statement was a promise to perform in the future and so does not constitute a "misrepresentation" for the purposes of the VCPA. *See Patrick v. Summers,* 235 Va. 452, 369 S.E.2d 162, 164 (1988). Regardless, Koons asserts that it did pay off the lien, so there was no misrepresentation. In addition, Koons asserts that its demand for an additional $1,959.73 to pay off the trade-in lien does not give rise to a VCPA claim because it was made after the purchase. Also, Koons' request for payment was valid.

Koons argues regarding the sales tax on the second RISC that the disclosures on that note are irrelevant because Nigh never received financing on that RISC. With regard to the sales tax on the third RISC, Koons contends that the amount identified is correct. Also, again, because the disclosures on the contracts are governed by TILA, Nigh may not premise VCPA liability on these issues. *See Hodges,* C.A. No. 00–793–A, at 13.

Koons also argues that Nigh's claim under the VCPA claiming misrepresentation of the fact that the Truck had not been in an accident must fail; the evidence shows that the Koons salesman only offered his opinion that the Truck had not been in an accident. (Nigh Dep. at 46, 57–58.). *See Saxby v. Southern Land Co.,* 109 Va. 196, 63 S.E. 423, 424 (1909) (stating that a misrepresentation affording grounds for damages must be of an existing fact, not a mere expression of opinion); *Mortarino v. Consultant Engineering Svs. Inc.,* 251 Va. 289, 467 S.E.2d 778, 781 (1996).

As to Count 9, Koons asserts that there is no breach of contract. The evidence shows that Koons provided an automobile with only 46,779 for which title was obtained in Virginia. Therefore, Koons satisfied the terms of the sales contract between the parties. (Pl. Mot. Summ. J. Ex. 4: Affidavit of Michael Field; Ex. 6: Title

Application; Ex. 10: Certificate of Title; Ex. 11: Reassignment of Title.)

Also, Koons asserts that there is no common law fraud here (Count 10). Koons argues that it is entitled to summary judgment for its alleged misrepresentations and alleged false disclosures for the reasons previously stated. Also, Koons argues that summary judgment is appropriate because Nigh falsely asserts that he was charged for the extended service contract before the contract was discussed with Nigh. The details of the extended warranty were in the papers that Nigh signed, which he had the opportunity to review. (Nigh Dep. at 49, 108–09; Compl. Ex. D & E.)

Koons argues in relation to the trade-in conversion claim (Count 11) that the claim cannot stand because Nigh voluntarily turned his Dodge Dakota over to Koons. Therefore, the "wrongful exercise of authority" element for conversion is not met. *See Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 505 S.E.2d 196, 201 (1998) (setting forth the elements of conversion). Also, for the Truck conversion claim (Count 12), Nigh cannot demonstrate that Koons exercised wrongful possession over the Truck without Nigh's consent. (Nigh Dep. at 27.)

Koons further argues that Defendant Household Automotive Finance Corporation ("HAFC") is entitled to summary judgment on all of Nigh's claims. Koons asserts that HAFC is not liable under the FTC Holder Rule because all of the conduct alleged against Koons is unsupported.

Koons also argues that it is entitled to summary judgment on its counterclaims against Nigh. Koons contends that Nigh failed to pay off the promissory note for the Truck and failed to repay the excess payment made by Koons towards the outstanding lien on Nigh's Dodge Dakota. Nigh signed the promissory note bearing the amount owed, but he has not made any payments on the note. Nigh also agreed by an Over/Under Letter that he would pay any additional loan amount that was owed on Nigh's Dakota if the outstanding loan on the Dakota exceeded Nigh's $7,500 estimate. Nigh has not paid his debt. Therefore, Koons argues that it is entitled to summary judgment on Counts 2, 3, 4, and 5 of its Amended Counterclaim.

## III. DISCUSSION

*Standard of Review*

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Analysis*

As an initial matter, the Court rejects Koons' argument that Nigh cannot sustain a number of his claims because Nigh's expert, Mr. Kendall, will not testify

for Nigh. The Court holds that expert testimony is not necessary for Nigh's claims. Nigh seeks statutory damages for his Truth in Lending Act and Federal Odometer Act claims. Expert testimony is not necessary to prove statutory amounts. Also, a factfinder can rely on the documents submitted by the parties and other testimonial evidence to calculate damages for the Virginia Consumer Protection Act, breach of contract, fraud, and conversion claims.

### A. Count I

In Count I, Nigh alleges violations of the Federal Odometer Act. *See* 49 U.S.C. §§ 32701 *et seq.* The Court grants summary judgment on some issues of the FOA claim, and denies summary judgment as to others.

The Court grants summary judgment on the issue of whether the odometer was defective. Nigh concedes that the odometer on the vehicle was not rolled back. Also, Nigh admits that the odometer has functioned properly during his ownership of the vehicle. (Nigh Dep. at 78.) However, Nigh alleges that Koons violated the FOA by failing to sign the Odometer Disclosure Statement; dating the ODS for February 4, 2000 when the sale occurred on March 5, 2000; and submitting a "false and fraudulent" re-assignment form to the DMV, which did not indicate the proper sale date or that Koons checked the odometer reading on the sale date. (Pl. Statement of Material Facts, Ex. J: ODS.; Ex. K: Re-assignment Form.) The Court denies summary judgment on these issues.

■ A material issue of fact remains as to whether Koons violated the technical aspects of the Federal Odometer Act. The FOA provides that a party transferring a motor vehicle must include with the State application for transfer "a statement, signed and dated by the transferor, of the

mileage disclosure … of the cumulative mileage registered by the odometer; or … that the mileage is unknown if the transferor knows that the mileage registered on the odometer is incorrect." 49 U.S.C. §§ 32705(a)(1)(A), (a)(1)(B), (b)(1). Koons does not contest Nigh's argument that Koons failed to satisfy the signature, accurate date, and accurate mileage requirements of the FOA (Koons focuses only on the issue of the accuracy of the odometer at the time Nigh first "purchased" the Truck and took it with him). The ODS supports the substance of Nigh's allegations. (Pl. Material Facts, Ex. J.)

Unless Exhibit J is not the final ODS that Koons submitted to the DMV, Nigh could be entitled to damages for Koons' violation of the statute. However, Nigh would have to prove that Koons had an intent to defraud in violating the statute, and a question remains as to what kind of damages Nigh could receive. *See* 49 U.S.C. § 32710. The FOA provides that a private person may sue a party for violation of the FOA, and that

> [a] person who violated this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for three times the actual damages or $1,500, whichever is greater.

49 U.S.C. § 32710. A material issue of fact remains as to whether Koons' violations were a result of an intent to defraud. In addition, Nigh has not yet demonstrated any actual damages as a result of the mis-statements and inaccuracies on the ODS. Therefore, summary judgment on the technical aspects of the FOA claim is not appropriate.

### B. Count II

In Count 2, Nigh alleges violations of the Truth In Lending Act in connection with the retail installment sales contract that Nigh signed on February 4, 2000

(RISC 1). The Court holds that summary judgment is appropriate as to Count 2 in its entirety.

■ Congress designed TILA as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair credit billing ... practices." 15 U.S.C. § 1601(a). Creditors must make specific disclosures when extending credit to customers. *See id.* § 1638(a). These disclosures include the amount financed, itemization of the amount financed, the total number of payments, finance charges, the annual percentage rate, and the identity of the creditor. *See id.* Courts construe TILA broadly so that it will provide protection for the consumer. Therefore, any failure to disclose information required by TILA, or TILA's Regulation Z, results in a technical violation. *See, e.g., Walker v. College Toyota, Inc.,* 399 F.Supp. 778 (W.D.Va.1974).[2]

■ Though strictly observing the mandate and policies of TILA, the Court herein grants summary judgment for Koons on a number of Nigh's TILA allegations. The Court grants summary judgment on Nigh's allegation that Koons increased the price of the Truck as a result of a discount withheld by Ford Motor Credit. The Court also grants Koons' motion on the allegation that the processing fee was itemized incorrectly and should have been a finance charge. Koons charged both cash and credit customers with the processing fee. In addition, the Court grants summary judgment on the allegation that Koons attempted to receive a greater profit by collecting a yield spread premium. Nigh does not oppose summary judgment on any of these claims under Count 2.

■ The Court finds to be without merit Nigh's argument that Koons should have included on the front of the sales contract that the actual finance charge, amount financed, and total of payments were estimates because these amounts could vary depending on Nigh's payment pattern. *See* 15 U.S.C. § 1638(a)(14); 12 C.F.R. § 226.18(f) (requiring a creditor to disclose the circumstances under which the annual percentage rate may increase if it is a variable rate). The back of the RISC states this explicitly. (*E.g.,* Compl. Ex. F.) Therefore, the Court grants summary judgment for Koons on this aspect of Nigh's claim.

■ The Court also grants summary judgment on the TILA timing issue. Nigh alleges that Koons failed to make meaningful and accurate disclosures prior to the consummation of the transaction relating to the annual percentage rate, amount financed, finance charge, and total number of payments. Regulation Z of TILA specifies how credit terms should be disclosed to a buyer:

(a) Form of disclosures.

(1) The creditor shall make the disclosures required by this subchapter clearly and conspicuously in writing, in a form that the consumer may keep.

(b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

12 C.F.R. § 226.17 ("Regulation Z"). The Act requires that consumers be given *be-*

---

2. However, TILA permits a plaintiff only one recovery under § 1640 per credit transaction, regardless of the number of specific violations alleged by the plaintiff. *See* 15 U.S.C. § 1640(g); *Hodges v. Koons Buick Pontiac GMC, Inc.,* C.A. No. 00–793–A, at 8 n. 6 (E.D.Va. Jan. 3, 2001) (Brinkema, J.) (unpublished Opinion); *Compton v. Altavista Motors,* 121 F.Supp.2d 932 (W.D.Va.2000) (citation omitted).

*fore consummation of the deal* a copy of the credit terms that they can keep to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available." 15 U.S.C. § 1601(a). Nigh argues that disclosure of the credit terms contemporaneous with his obligation to sign the sales contract failed to provide him with an opportunity to "shop" for a better interest rate. However, giving a buyer the credit terms on the form that he is to sign complies with the timing requirements of the Act. The RISC contains all of the credit and financing terms of the transaction. Nigh was given the opportunity to read the RISC before he signed it. He acknowledged in his deposition that "he had an opportunity to look over the papers" given to him in connection with his purchase before he signed them. (Nigh Dep. at 49.) He also stated with regard to the contract that "[he] had read over it" before he signed it. (*Id.* at 52.) Nigh did not become obligated on the credit transaction until he signed the RISC. *See Cades v. H & R Block, Inc.*, 43 F.3d 869, 876 (4th Cir.1994) (stating that a transaction is consummated when the lender and borrower sign a contract obligating them, respectively, to lend and to borrow funds); *Bryson v. Bank of New York*, 584 F.Supp. 1306, 1317 (S.D.N.Y.1984) (stating that disclosure obligation attaches at the point a consumer makes a choice and commits himself to the purchase of credit, regardless of lender's degree of commitment). If Nigh did not like the terms, he could have chosen not to sign at that time and chosen to take the agreement with him to "shop" for better rates. Nigh acknowledged in his deposition that he knew from previous experience that he could shop for bank credit rates. (Nigh Dep. at 54.) He signed immediately because "[he] was afraid it [the Truck] would be sold if [he] didn't get it that evening." (*Id.* at 55.) Nigh made the

choice to sign immediately and not shop around; Koons cannot be held liable for Nigh's decision.

Nigh cites *Polk v. Crown Auto, Inc.* for the proposition that providing a buyer a retail installment sales contract itself for the buyer to sign does not satisfy the mandate and policy of TILA. 221 F.3d 691 (4th Cir.2000). *Polk* does not state that the RISC cannot be the document that a buyer can keep for rate comparison shopping. The *Polk* court's goal was to clarify the timing issue of the statute, not to clarify the form of the disclosure (e.g., in the form of the RISC to be signed as opposed to in a separate writing). The *Polk* court's principal holding was that a auto dealership (or other creditor) cannot give a buyer/debtor a copy of his credit terms after the consummation of a transaction; the dealer must provide a detailed disclosure of the credit terms in writing *before* consummation of the transaction. *See id.* at 692 (interpreting Regulation Z of TILA, 12 C.F.R. § 226.17). In *Polk*, the auto dealer explained the credit terms to the buyer *orally*, had the buyer sign forms consummating the transaction, and then gave the buyer full written disclosures in a form that he could keep. *See id.* at 691. The dealer in *Polk* ultimately gave the buyer the RISCs as his copy of the credit terms in writing. · *See id.* However, it is unclear from the recitation of the facts whether the RISCs contained all of the credit terms at the time that the buyer signed them. The *Polk* facts suggest that the buyer "entered into" the agreement with the dealership, then signed the RISCs. *Cf. Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 247 (3rd Cir.1980) (detailing how auto purchaser signed binding lease agreement but was not provided, and did not sign, the separate, mandatory disclosure form until a week later). It appears that the dealership completed the

RISC forms with all of the terms in order to memorialize the deal and provide the buyer with a copy *after* the deal had been otherwise consummated. *See Polk,* 221 F.3d at 691; *cf. Thomka,* 619 F.2d at 247 (detailing how lease agreement and disclosure statement were prepared by dealership and provided to purchaser separately). The Court finds that provision of a RISC with all of the sales terms prior to signature grants a buyer the opportunity to review the terms prior to signing, and to defer signing if the terms are not agreeable. *See Polk,* 221 F.3d at 692.[3]

 Notwithstanding the timeliness of Koons' disclosures to Nigh, Koons is also entitled to summary judgment on the timing issue because Nigh cannot demonstrate actual damages. The only remedy for failing to timely make disclosures is actual damages. *See* 15 U.S.C. § 1640(a)(4) (indicating that statutory damages are only available for violations of § 1638(a)(2), (3), (4), (5), (6), and (9); and that otherwise an individual must sue for actual damages). Koons' alleged failure to provide timely disclosures falls within the purview of 15 U.S.C. § 1638(b), for which only actual damages are available. *See id.* RISCs 1 and 2 were not used in connection with Nigh's purchase. Therefore, Nigh could not suffer any damages on the basis of his alleged inability to shop around for rates better than those in RISCs 1 and 2.

C. *Count III*

 In Count 3, Nigh alleges TILA violations as to the RISC signed on February 25, 2000 (RISC 2). As a preliminary matter, the Court could hold Koons liable for TILA violations made in connection with RISCs 2 and 3 although these contracts were not ultimately used in financing the Truck. Car dealers and other creditors are liable for TILA violations regardless of whether the contract at issue was used in financing, as long as there are damages. *See Bryson,* 584 F.Supp. at 1317. A contract need not be backed by financing for a deal relating to that contract to be consummated, thereby requiring accurate and timely disclosures prior to consummation. *See id.* Koons' duty to provide accurate and timely disclosures to Nigh attached when Nigh made the choice and committed himself to the purchase of credit with Koons. *See id.; Cades,* 43 F.3d at 876 (stating that parties consummate a transaction at the time the customer becomes contractually obligated on a credit transaction). "It is at that time that the consumer becomes vulnerable to actual damage from the lender's inadequate or deceptive disclosures, for at this time he or she can be contractually bound to the terms of the lending contract at the option of the lender." *Id.* Although Koons had not yet obtained financing through a bank so that Koons would be paid, Nigh obligated himself to pay Koons (or the assignee of the loan) each time Nigh signed a RISC. Neither Koons nor Nigh knew whether RISC 2 (or, previously, RISC 1) would be the final financing contract between the parties. Nigh signed the RISC with the understanding that the contract could—and probably would—be the binding contract. Koons arguably thought that RISC

---

**3.** Nigh and the Western District of Virginia interpret *Polk* to mean that a creditor does not satisfy its TILA timing obligations by providing the TILA disclosures on the written credit contract prior to the debtor's signing. *See Walters v. First State Bank,* 134 F.Supp.2d 778 (W.D.Va.2001) (publication pending). They argue that a consumer cannot merely be shown the disclosures on the original credit contract prior to signing it; the creditor must provide the consumer with a separate copy of the required disclosures before the parties consummate the transaction. *See id.* at 4–5. The Court is not persuaded by the interpretation of *Polk* advanced by Nigh and the Western District of Virginia.

1 then RISC 2 would be the final contract. Therefore, Koons should have attempted full compliance with TILA before the customer was committed as to *each* sales contract. *See id.*

Addressing Nigh's claims in Count 3, Nigh makes several of the same allegations as to RISC 2 in this Count as he made as to RISC 1 in Count 2. Therefore, the Court grants summary judgment on these issues: the processing fee, the discount, and the yield spread premium. Nigh also re-raises the alleged untimeliness of Koons' disclosure of Nigh's credit terms.

In defense of any liability with regard to the timing of the RISC 2 and RISC 3 disclosures, Koons asserts a "good faith" defense. The Court holds that Koons may not prevail on the good faith defense for any of Koons' failures to conform with TILA. Section 1640(f) of TILA precludes liability for:

> Any act done or omitted in good faith in conformity with any rule, regulation or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or an employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe thereof . . . .

15 U.S.C. § 1640(f). Koons argues that the Court should not hold Koons liable for the timeliness of disclosures to Nigh because Koons acted in conformity with the applicable rules and regulations. Because the Court finds that Koons' disclosures to Nigh were timely for the first and second notes that Nigh signed (RISCs 2 and 3), *see infra* at section II and below, the Court need not resort to the good faith defense for that aspect of Nigh's claim. However, the Court will address Koons' good faith defense because the Court observes that this is a common defense raised in this context.

■ The Court holds as a matter of law that Koons cannot prevail on the § 1640(f) good faith defense here. With regard to the timing of disclosures for RISCs 1 and 2, Koons has not effectively exercised the good faith defense for "conformity with any rule [or] regulation." *See* 15 U.S.C. § 1640(f). Koons does not identify a Federal Reserve Board interpretation of the statute or Regulation Z, or any Board ruling or opinion letter upon which Koons relied to determine the timing of its RISC 2 or RISC 3 disclosures to Nigh. *Cf. Charles v. Krauss Co., Ltd.*, 572 F.2d 544, 547–49 (5th Cir.1978) (holding that defendant could employ § 1640(f) defense where defendant clearly identified opinion letters expressing the interpretation upon which defendant relied). Therefore, Koons cannot use the good faith defense for its alleged timing and form violations of TILA Regulation Z, 12 C.F.R. § 226.17. *See Gillard v. Aetna Finance Co., Inc.*, 414 F.Supp. 737, 749 (E.D.La.1976) (holding that defendant was not entitled to take advantage of good faith defense of § 1640(f) because he did not identify any Board rule, regulation, or interpretation to which it attempted to conform in drafting the particular language of the disclosure statement alleged to be misleading). Koons does not argue the good faith defense for Nigh's allegations that Koons violated TILA by disclosing false information. Regardless, because Koons does not specify that it relied on a particular interpretation of Regulation Z or the statute in presenting to Nigh the required information on his lending statements, Koons cannot rely on the good faith defense for any of Nigh's TILA claims. *See id.*

Notwithstanding the failings of Koons' principal arguments, the Court grants summary judgment on the disclosure tim-

ing issue as to RISC 2. As with RISC 1, no genuine issue of material fact exists as to the circumstances surrounding the signing of RISC 2. The Court holds that Nigh was given the opportunity to shop around for better rates. Nigh's arguments and testimony demonstrate that Koons presented Nigh with documents bearing the necessary TILA disclosures before Nigh consummated the transaction with Koons by signing the documents. Under the facts as alleged by Nigh, when Nigh appeared at the dealership on February 25, 2000 to sign a new loan and documents, he was informed that he would have to pay an additional $2,000 for a down payment on the Truck. (Nigh Dep. at 57.) Nigh informed the Koons representative that he did not have $2,000, and that if Koons needed the additional money, Nigh would "just cancel the deal." (*Id.*) Koons informed Nigh that he could not have his money back and that they had already sold his trade-in vehicle. (*Id.* at 58.) Upon hearing this, Nigh decided to sign the new sales contract (RISC 2). (*Id.*)

By Nigh's own testimony, Nigh had an opportunity to shop around for better credit rates because he had an opportunity to reject the credit terms given to him. Nigh was made aware of the relevant credit terms, because only after being made aware of them could he have rejected them. Although Nigh's only perceived alternative to accepting the credit terms was to be without a vehicle, Nigh was not obligated to sign RISC 2. Once Koons was unable to obtain financing under RISC 1, Nigh was no longer contractually obligated to Koons (Compl. Ex. D (RISC indicating that Nigh could cancel the deal if dealership could not obtain financing on the RISC)); but Koons remained contractually obligated to Nigh if Koons retained Nigh's trade-in vehicle. Nigh had legal remedies to address the situation and did not have to sign another contract with Koons. Al-

though Nigh's choice to sign RISC 2 was made under arguably unfavorable conditions, the choice was Nigh's to make. Koons fulfilled its TILA obligation by disclosing the relevant terms to Nigh before Nigh made his decision. Accordingly, summary judgment on the timing issue is appropriate.

The Court holds that summary judgment is also appropriate on the issue of the sales tax calculation on RISC 2. Koons asserts that one computes sales taxes for an automobile in Virginia by adding the sales price of the vehicle with the processing fee and multiplying by 3%. Koons' calculation of the sales tax accounts for taxes not considered by Nigh (e.g., the gross receipts tax and the tax imposed on the extended service contract). Nigh provides no evidence that his more simple calculation is correct.

With respect to another Count 2 claim, the Court denies summary judgment as to the improper charge for a "silencer" for the Truck. The evidence supports Koons' assertion that inclusion of the silencer was a mistake. Koons corrected this mistake by eliminating the charge on RISC 3. (Def. Mot. for Summ. J., Ex. 4: Field Aff.) However, Koons has not demonstrated that the mistake of adding the silencer occurred even though Koons had procedures in place to prevent such an error. The policy of TILA is that a creditor not be held liable for simple mistakes. Section 1640(c) of Title 15 provides a "bona fide error defense." The bona fide error defense of § 1640(c) requires the creditor to show first, that, by a preponderance of the evidence, the violation was not intentional, and resulted from a bona fide error; and second, that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See Thomka,*

619 F.2d at 251 (quoting 15 U.S.C. § 1640(c)). The first part of the defense has been interpreted to require a showing that the error was merely clerical. *See id.* (citing *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir.1978); *Ives v. W.T. Grant Co.,* 522 F.2d 749, 757–58 (2d Cir.1975)). Koons' correction of the mistake indicates that inclusion of the silencer was merely a clerical error. (Field Aff.) However, Koons has not presented argument or evidence that Koons had procedures in place to avoid such a clerical error. *See id.* The inclusion of the silencer altered and made incorrect the disclosure of the total amount financed, which violates TILA. *See* 15 U.S.C. § 1638(a)(2)(A). Therefore, as a matter of law, Koons is not entitled to summary judgment on the silencer claim.

For these reasons, the Court denies summary judgment as to the erroneous charge for the silencer, but grants summary judgment as to all of the other Count 3 claims.

### D. *Count IV*

In Count 4, Nigh alleges TILA violations as to the final retail installment sales contract ("RISC 3"), signed on March 5, 2000. For the reasons previously stated as to RISCs 1 and 2, the Court holds that summary judgment is appropriate as to the issue of the processing fee, the yield spread premium, the discount, and the proper calculation of the sales tax. The Court also grants summary judgment on the timing issue as to RISC 3 for the same reasons stated as to the timeliness of the RISC 2 disclosures. RISC 3 made a simple change to RISC 2, removing the silencer erroneously charged to Nigh. Nigh had an opportunity to review the revised con-

tract before he signed it. He observed that the new sales contract decreased his payments by $18 a month. (Nigh Dep. at 64.) Nigh's decision to sign the contract without objection [4] was Nigh's decision to make.

■ The Court holds that summary judgment is also proper as to the $298 charge that Nigh asserts is "unexplained." Koons asserts that the $298 is a charge for an "after market" product for which Nigh contracted. This item is properly listed on the final sales contract. (Compl.Ex. F.) There is no requirement under TILA that Koons provide on a consumer's disclosure statement a detailed explanation of an "after market" charge next to the charge, only that all charges be included in the computation of the "amount financed." *See* 15 U.S.C. § 1638(a)(2)(A). Koons asserts that it contracted to perform undercoating on the Truck. Nigh argues that he did not pay for, and did not receive, undercoating. Evidence provided to the Court controverts Nigh's statements. Both Koons and Nigh submitted a copy of a "we owe" form indicating that Koons "owed" Nigh undercoating and would perform undercoating on the Truck by March 25, 2000. (Def.Mot.Summ. J., Ex. 16.) The form indicates that Koons charged Nigh $298 for the undercoating, and Nigh signed the form. Nigh's signature on the "we owe" form indicates that Koons both explained the $298 charge and properly disclosed it. The form obligated Koons to perform the undercoating if Nigh made an appointment with Koons' service department within 30 days of signing the "we owe" form. (*Id.*) The evidence indicates that Nigh never returned to Koons to have the undercoating put on the Truck; in-

---

**4.** Nigh testified in his deposition that he wanted to question Mike Field and a Koons manager named Anton or Antoine about the necessity of having Nigh sign the contract.

(Nigh Dep. at 61–64.) However, after being informed that neither Koons representative was available, Nigh signed RISC 3 and left the dealership. (*Id.* at 64.)

stead, around March 5, 2000, Nigh consulted an attorney to sue Koons. Nigh's failure to make an appointment to receive the undercoating does not negate the fact that Koons properly disclosed the charge on RISC 3. Therefore, summary judgment for Koons on this aspect of Count 4 is proper.

The Court's holding with regard to the propriety of the $298 charge leads the Court to grant summary judgment as to disclosure of the proper amounts for the amount financed, the finance charge, total number of payments, and the total sales price. Koons has demonstrated that the calculations for these disclosures are correct due to the validity of the undercoating charge.

■ However, the Court denies summary judgment as to the disclosure of the proper annual percentage rate ("APR") on the final RISC. There remains a genuine issue of material fact as to whether Koons calculated the APR correctly. Koons disclosed an APR based upon an initial first term of 45 days, based on the RISC of February 25, 2000 (RISC 2). However, the consummation of the third RISC occurred on March 5, 2000. Nigh asserts that the different inception date results in an increase in the APR from 2.1977% (or 21.20%), which exceeds the ⅛ of 1 percent accuracy tolerance allowed by TILA. (Pl. Opp. to Mot. Summ. J., Ex. N: National Consumer Law Center's APR Calculation Program). Koons argues that the loan period began on February 25, 2000, because RISC 3 merely revised an extant contractual agreement. However, RISC 3 removed the silencer from Nigh's credit terms, thereby reducing the amount financed. Consequently, RISC 3 evidenced different credit terms than RISC 2. Therefore, it is arguable that March 5, 2000, the date Nigh signed RISC 3, marks the beginning of Nigh's loan period. According-

ly, Koons is not entitled to summary judgment on the APR disclosure issue.

### E. *Count V*

In Count 5, Nigh alleges violations of the Virginia Consumer Protection Act. *See* VA. CODE § 59.1–196 *et seq.* The VCPA prohibits sellers from employing fraudulent and deceptive practices with consumers in connection with consumer purchases. *See id.* The VCPA permits any person who suffers loss as a result of a violation of the Act to bring suit to recover damages. *See id.* § 59.1–204.

For the reasons stated above in relation to RISC 1, the Court grants summary judgment on the allegation that Koons' representation to Nigh that the Truck had an accurate odometer was a deception. Nigh concedes that he has no evidence that the odometer was inaccurate. The Court also grants summary judgment as to the disclosure of the processing fee as a "fee" rather than a "finance charge," for the reasons previously stated (i.e., Nigh's lack of opposition).

■ In addition, the Court holds that Koons is entitled to summary judgment as to Nigh's allegation that Koons represented that the Truck had never been in an accident. The VCPA makes it unlawful for any supplier in connection with a consumer transaction to commit the "fraudulent acts or practices ... [of] using any ... deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE. § 59.1–200(A)(14). The claims of fraud and misrepresentation are distinct under the VCPA. The misrepresentations providing the basis of a VCPA claim need not be pled with the same kind of particularity as common law fraud claims. *See, e.g., Patten v. Chrysler Corp.,* 1997 WL 1070537, *2 (Va. Cir. Ct.1997); *Debrew v. Lexus,* 1997 WL 1070613, *2 (Va. Cir.

Ct.1997). However, Nigh must still prove a false representation. *See* VA. CODE § 59.1–200(A)(14). Under Virginia law, a false representation must be of an existing fact, not a mere expression of an opinion. *See Mortarino v. Consultant Engineering Svs., Inc.,* 251 Va. 289, 467 S.E.2d 778, 781 (1996); *Saxby v. Southern Land Co.,* 109 Va. 196, 63 S.E. 423, 424 (1909).

 The Court finds that the Koons representative whom Nigh asked whether the Truck had been in an accident expressed an opinion, not a fact. Nigh asked Mr. John Sherman, "Has it been wrecked or been in any accidents?" Mr. Sherman merely responded, "It doesn't look like it's been in any accidents to me." (Nigh Dep. at 46.) Mr. Sherman said nothing more than that. *(Id.)* Mr. Sherman's statement is not a representation of a fact because it was not an *"unambiguous* representation[ ] of the present quality or character of the [Truck]." *See Mortarino,* 467 S.E.2d at 781 (emphasis added). Mr. Sherman's response was an opinion. The indefiniteness of Mr. Sherman's statement should have put Nigh on notice that he needed to make further inquiry. *See Saxby,* 63 S.E. at 424. Nigh must assume the responsibility for his decision not to do so. *See id.* ("Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a man is not justified in placing reliance upon them.").

Nigh offers as proof that Mr. Sherman made a misrepresentation the fact that the former owner of the Truck informed Nigh that the Truck had been involved in a collision. However, Nigh offers no evidence that Mr. Sherman, or anyone at Koons, was aware of this. One cannot "knowingly" make a misrepresentation if he or she does not know that the representation is false.

 Summary judgment is also proper on Nigh's assertion that Koons misrepresented that the processing fee was a mandatory charge. The evidence demonstrates that the fee was "mandatory" for all Koons customers. Nigh concedes that Koons charged the $289 fee to all of its customers, cash and credit. Nigh's misunderstanding that a regulation or law mandated that all dealerships charge ·a processing fee does not amount to a misrepresentation on Koons' part.

 The Court also grants summary judgment on the issue of Koons' failure to pay the lien on Nigh's trade-in. Notwithstanding Koons' assertion that it has paid the lien on Nigh's trade-in, the Court grants summary judgment because Koons' statement that it would pay off the trade-in is not a false representation under Virginia law. "A mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Patrick v. Summers,* 235 Va. 452, 369 S.E.2d 162, 164 (1988). Koons' statement was a promise as to a future event. Under contract law, one can enter into a binding promise when the parties conform with the other elements of contract (e.g., promise/offer, consideration, acceptance). Nigh's claim for Koons' failure to fulfill its promise is a claim sounding in contract, not in the VCPA.

 Koons is also entitled to summary judgment on Nigh's allegation that Koons misrepresented on RISC 2 that it had installed a silencer on the Truck. Nigh has not alleged any loss as a result of the alleged misrepresentation. Under the VCPA, one may initiate an act under the VCPA only if he or she has suffered loss. *See* VA. CODE § 59.1–204(A). Koons eliminated the silencer charge on the RISC that actually binds Nigh contractual-

ly (RISC 3). Therefore, Nigh cannot demonstrate any loss. Accordingly, summary judgment is appropriate. *See Chisolm v. TransSouth Financial Corp.*, 194 F.R.D. 538, 549 (E.D.Va.2000) (holding that some loss is required in order to sustain a claim under the Virginia Consumer Protection Act).

■ The Court further holds that summary judgment is proper on Nigh's claim that Koons inappropriately failed to provide Nigh with a Buyer's Order during the negotiation process. Nigh asserts this claim pursuant to Virginia Code ¶ 46.2–1530. "Title 46.2, Chapter 15 of the Virginia Code establishes a comprehensive scheme of administrative remedies ..., [i]t does not create a private right of action." *Hodges*, C.A. 00–793–A, at 15 (citing VA. CODE §§ 46.2–1503.4 through –1507). Therefore, this claim cannot stand.

The Court also grants summary judgment for Koons on Nigh's allegation that Koons fraudulently demanded $1,959.73 for the remaining balance on Nigh's trade-in. At the time he contracted to trade-in his vehicle and buy the Truck, Nigh signed an "Over/Under Letter" agreeing to pay any amount over the $7,500 estimate that he provided Koons for the remaining debt on the trade-in. (Def. Mot. Summ. J., Ex. 8: Over/Under Letter.) Nigh does not dispute that Koons paid off the lien on the trade-in vehicle in April, 2000. Nor does Nigh dispute that the amount of the lien exceeded the $7,500 estimate. The lien exceeded the estimate by $1,399.73. Nigh failed to give Koons the additional $1,399.73 to pay off the trade-in's loan. As a result, the lien-holder repossessed the trade-in from the Koons lot because Koons could not pay off the lien on the trade-in. Koons had to pay a $560 repossession and storage charge. In total, Koons had to pay $1,959.73 over the estimate to obtain title on the trade-in. Therefore, Nigh

owes Koons $1,959.73, and there is no misrepresentation as to this fact. Accordingly, summary judgment for Koons is appropriate.

The Court grants summary judgment on Nigh's allegation that Koons misrepresented the sales tax on RISCs 2 and 3. "The VCPA exempts from coverage any aspect of a consumer transaction governed by TILA." *See, e.g., Hodges*, C.A. 00–793–A, at 13 (citing VA. CODE § 59.1–199(c)); VA. CODE § 59.1–199(c) (exempting from coverage by the VCPA consumer transactions regulated by 15 U.S.C. § 1601 *et seq.*). The accuracy of sales tax disclosures are governed by TILA. Therefore, Koons is entitled to summary judgment on this aspect of Count 5 as a matter of law.

■ Finally, the Court holds that summary judgment is appropriate on Nigh's claim that Koons failed to transfer title to the Truck in accordance with Virginia Code § 46.2–1542. Koons does not address this aspect of Count 5. However, a court may enter summary judgment *sua sponte* where the Court has previously decided the issue presented. *See Arizona v. California*, 530 U.S. 392, 412–13, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000). Here, the Court has already held that summary judgment is appropriate on § 46.2 claims. As previously stated, section 46.2, Chapter 15 of the Virginia Code does not create a private right of action. *See Hodges*, C.A. 00–793–A, at 15 (citing VA. CODE §§ 46.2–1503.4 through –1507). It saves judicial resources for the Court to avoid the need to resolve this question again in a subsequent proceeding. *See Arizona*, 530 U.S. at 413, 120 S.Ct. 2304. The Court's entry of summary judgment on Nigh's § 46.2–1542 claim is appropriate as long as Nigh was on notice that he had to come forward with all of his evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nigh

knew that he should present evidence regarding the validity of a § 46.2 claim under the VCPA because Koons' argued in its motion for summary judgment that § 46.2 claims were invalid. Accordingly, summary judgment on Nigh's § 46.2–1542 claim is proper.

█ The Court leaves intact Nigh's claim that Koons misrepresented that Nigh was required to sign the second and third RISCs, or else Koons considered the Truck stolen. Koons does not address this aspect of Count 5. Nonetheless, a genuine issue of material fact exists as to (1) whether the misrepresentation occurred, and (2) whether Nigh suffered a loss as a result. *See* VA. CODE. § 59.1–204(A). The only evidence before the Court that the misrepresentation occurred is Nigh's hearsay testimony that Nigh's brother, Matt Nigh, informed Plaintiff Nigh that someone from Koons called and made this misrepresentation. (Nigh Dep. at 61–62.) Nigh did not ask anyone at Koons about the statement. (*Id.* at 63–66.) Nigh has not presented any evidence of loss regarding the misrepresentation. Therefore, this misrepresentation claim stands.

### F. *Count VI*

Nigh alleges in Count 6 violations of the Virginia Consumer Protection Act as to the nature and characteristic of the representations made by Koons. The VCPA makes it unlawful for any supplier in connection with a consumer transaction to commit the "fraudulent acts or practices ... [of] misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits." *See* VA. CODE. § 59.1–200(A)(5).

For the reasons previously stated, the Court grants summary judgment as to (1) Nigh's allegation that Koons represented that the processing fee was mandatory; and (2) Koons' alleged misrepresentation

that the Truck was of a higher value because it had not been in an accident.

### G. *Count VII*

Nigh alleges in Count 7 violations of the VCPA as to Koons' affiliations. The VCPA makes it unlawful for any supplier in connection with a consumer transaction to commit the "fraudulent acts or practices ... [of] misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another." *See* VA. CODE. § 59.1–200(A)(3). Nigh alleges that Koons represented that Koons was affiliated with the Virginia Department of Motor Vehicles. Nigh asserts that Koons represented that Koons would use the $298 processing fee to get the tags and title for the Truck. Koons did not perform the tag and title work before the plates expired in March, 2000. (Nigh Dep. at 66–67.) However, Nigh concedes that Koons ultimately transferred title of the Truck to Nigh in May, 2000. Therefore, Nigh cannot demonstrate any damages as a result of the alleged "misrepresentation" that Koons was affiliated with the DMV. Accordingly, summary judgment is proper. *See* VA. CODE § 59.1–204 (indicating that one must suffer loss to maintain a VCPA claim).

### H. *Count VIII.*

Nigh alleges in Count 8 violations of the VCPA's prohibition against offering to sell goods that are defective. The VCPA makes it unlawful for any supplier in connection with a consumer transaction to commit the "fraudulent acts or practices ... [of] advertising or offering for sale goods which are used, secondhand, repossessed, defective, blemished, deteriorated, [etc.,] without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deterio-

rated, [etc.]" *See* VA. CODE. § 59.1–200(A)(7).

■■■■■ For the reasons previously stated in the analysis of Count 1 (Federal Odometer Act), the Court grants summary judgment as to Nigh's allegation that the Truck possessed a defective odometer. The Court also holds that summary judgment is appropriate as to the allegation that the Truck was "defective" for having been in an accident and having a new hood. As stated in the Court's analysis of Count 5, Nigh has not alleged that Koons knew that the Truck had been in a collision. A supplier cannot advertise a condition about which it did not know. Although § 59.1–200(7) does not state that a seller must "know" of a "defective" or "blemished" condition before being required to disclose the condition in conjunction with the offer of sale, the section does specify that the statute is intended to prohibit and penalize "fraudulent," or deceptive, practices. *See id.* Where a seller does not know that its product is blemished, the seller can not seek to deceive by failing to disclose the blemished condition. Therefore, upon the evidence presented, Koons cannot be found to have "fraudulently" advertised or offered for sale a Truck that had been in an accident. *Cf.* 1985–86 Op. Att'y Gen. 324, 325 (Va.1985), *cited in Debrew,* 1997 WL 1070613, at *2 (stating that failure to disclose prior wreck of a vehicle is a "misrepresentation by silence" governed by 59.1–200 [a "misrepresentation" implies a *knowing* disclosure of a falsehood] ). Therefore, summary judgment is proper.

I. *Count IX*

In Count 9, Nigh alleges breach of contract. The Court grants summary judgment as to the breach of contract claim. Nigh alleges that, as part of its contract with Nigh, Koons had an obligation to sell an automobile with only 46,779 miles, for a $4,000 down payment, with title, within 30 days. Nigh states that the contract that he had with Koons included a $4,000 down payment. However, the contract in force at this time indicates a down payment of $6,000. To Nigh's detriment, he did not rescind RISC 3, which requires the $6,000 down payment. Instead, Nigh signed RISCs 2 and 3. Therefore, a $4,000 contract term is not a part of the contract between the parties. Thus, Koons has not breached its contract by demanding an additional $2,000 for a down payment.

■■■■■ Nigh alleges that Koons has breached the contract by failing to transfer title. However, where vehicles are financed, title remains with the creditor; purchasers are given *ownership* of financed vehicles. *See Lewis v. Commonwealth,* 28 Va.App. 164, 503 S.E.2d 222, 224 (1998). The issuance of the Temporary Certificate of Title transferred ownership of the Truck to Nigh on February 4, 2000. (Def. Reply to Opp. to Mot. for Summ. J., Ex. C.) *See Lewis,* 503 S.E.2d at 223–24 (stating that temporary certificate effectively transfers ownership); VA. CODE § 46.2–1542(A); Therefore, Nigh's allegation can be interpreted as a claim that Koons breached its duty because it did not issue a permanent certificate of ownership until May, 2000, violating Koons' responsibility to issue the certificate within 30 days of sale. As a result, Nigh's tags expired. However, Nigh has not demonstrated how this "breach" of the contract caused him damages. One must plead damages to prevail on a breach of contract claim. *See Westminster Investing Corp. v. Lamps Unlimited, Inc.,* 237 Va. 543, 379 S.E.2d 316, 317 (1989) (stating that the essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right

or duty, and (3) a consequential injury or damage to the plaintiff). Nigh has not demonstrated any damages as a result of the untimely transfer of a permanent certificate of ownership.

In addition, Nigh concedes that there is no indication that the Truck had a defective odometer. Therefore, the contract accurately reflects that the Truck had 46,779 miles when Nigh first took possession of, and acquired ownership of, the Truck. Yet, if the final sales contract (RISC 3) should have reflected the miles accrued from February 4, 2000 to March 5, 2000, then Nigh would still have to demonstrate that this difference in mileage was a breach of the contract that caused Nigh damages. *See id.* Nigh cannot demonstrate that he suffered damages as a result of the minor difference in mileage. In fact, Nigh states that he has had no complaints with the Truck since he bought it. (Nigh Dep. at 66 (stating that he was happy with the car after he bought it and consummated the transaction).) For these reasons, the Court grants summary judgment for Koons on Nigh's breach of contract claim.

### J. *Count X*

In Count 10, Nigh alleges that Koons committed common law fraud. As to each fraud claim, the Court rules on summary judgment as follows: [5]

**a)** Motion granted as to claim. Koons did not misrepresent the miles that the Truck had at the time Nigh took possession. Even if Koons should have represented the odometer miles to Nigh as of March 5, 2000 when Nigh signed the final contract, Nigh has not demonstrated that he has suffered damage as a result of the false representation. Damages are a nec-

essary component in an action for fraud. *See Batrouny v. Batrouny*, 13 Va.App. 441, 412 S.E.2d 721, 723 (1991) (stating the elements of fraud as (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled). Moreover, Nigh cannot demonstrate that Koons had the intent to mislead Nigh about the real mileage, because Koons disclosed the mileage at the time Nigh took possession and Nigh was able to monitor the mileage thereafter. *See id.* (stating intent to mislead as element of fraud).

**b)** Motion granted as to claim. Nigh does not object. He concedes that it was not necessary for Koons to characterize the processing fee as a "finance charge."

**c)** Motion granted as to claim. As previously stated, Nigh has not provided any evidence that Koons intended to mislead Nigh into thinking that imposition of the processing fee was mandated by law.

**d)** Motion granted as to claim. As stated in the analysis of Count 5, Mr. John Sherman merely expressed an opinion that the Truck had never been in an accident. *See Mortarino*, 467 S.E.2d at 781. Nigh neither demonstrated that this statement constituted a "misrepresentation" for purposes of fraud, *see id.*, nor that Mr. Sherman had an intent to deceive in making this statement.

**e)** Motion granted as to claim. Nigh notes in his Complaint that RISC 2 "included a charge of $965 for a 'Silencer.'" (Compl.¶ 20.) Nigh also states that Koons "did not install a silencer on the Truck, but charged him" for the silencer. (Compl.¶ 23.) Nigh then argues that a genuine issue of fact remains as to wheth-

---

**5.** *See infra* section II.A, Parties' Contentions (listing by alphabetical itemization Nigh's fraud claims).

er Koons included the silencer on RISC 2 with an intent to deceive. However, as noted, Koons removed the silencer charge in RISC 3. Therefore, regardless of whether there was any intent to defraud Nigh, Nigh cannot prove damage as a result of the silencer charge. *See Batrouny*, 412 S.E.2d at 723 (Va.App.1991) (stating as an element of fraud a resulting damage to the party misled).

**f)** Motion granted as to claim. As detailed in the analysis of Count 4, Koons has demonstrated that the $298 charge on RISC 3 was proper. There is no genuine issue of fact as to whether the charge appropriately represents a charge for undercoating.

**g)** Motion granted as to claim. As previously stated, the promise to pay off the lien on the trade-in was not a false representation. Fraud claims cannot be predicated on promises or statements as to future events. *See Patrick*, 369 S.E.2d at 164. Regardless, Koons has provided evidence in the form of an affidavit that it in fact paid the lien on Nigh's trade-in vehicle. (Def. Mot. For Summ. J., Ex. 4: Field Aff.) Nigh has not produced any evidence to dispute that Koons paid the lien.

**h)** Motion granted as to claim. Nigh claims that Koons fraudulently charged Nigh for an extended service contract without discussing it with him. However, Nigh does not dispute that he was given the papers regarding the service contract, and that all of the pertinent information was filled in. (Nigh Dep. at 108–09.) Although Koons may not have discussed the details with Nigh, Nigh had an opportunity to review the papers before signing them. (Nigh Dep. at 49.) The contract evidences a service contract provided by "Easy Care" and a charge of $2300 to be paid to Easy Care. (Compl. Exs. A & B.) Therefore, Koons did not make any false representation regarding the service contract. Thus, a claim for fraud cannot stand. *See Batrouny*, 412 S.E.2d at 723 (Va.App.1991) (stating as an elements of fraud a false representation made with intent to mislead).

**i)** Motion granted as to claim. Nigh alleges that Koons committed fraud by stating that Koons would report the Truck as stolen if Nigh refused to come in and sign a new sales contract. Regardless of whether Koons threatened to report the Truck as stolen, the threat was a statement about future events. Fraud claims cannot be predicated on promises or statements as to future events. *See Patrick*, 369 S.E.2d at 164.

**j)** Motion granted as to claim. As demonstrated above, Koons did not fraudulently request that Nigh pay Koons $1,959.73 for the amount that exceeded Nigh's estimate of the balance on his trade-in. Nigh agreed under contract to pay the amount over the estimate. (Def. Mot. For Summ. J., Ex. 8: Over/Under Letter.)

For these reasons, the Court holds that summary judgment for Koons is appropriate on every aspect of Nigh's fraud Count.

### K. *Counts XI and XII*

Nigh alleges in Count 11 that Koons converted his trade-in vehicle. In Count 12 he alleges that Koons converted the Truck. Koons moves for summary judgment on these Counts. Nigh did not argue any opposition to Koons' arguments in the pleadings filed with the Court. Therefore, the Court grants summary judgment on these claims.

### L. *Count XIII*

In Count 13 Nigh alleges all of the same acts against Household Automotive Finance Corporation as it alleges against

Koons. The contract between Nigh and Koons provides that any holder of the contract is subject to all of the claims which the debtor could assert against the seller. This language is referred to as the FTC Holder Rule. Accordingly, the Court holds that the disposition of each claim for or against HAFC follows the disposition on summary judgment for or against Koons.

### M. *Counterclaim II*

██ The Court holds that summary judgment is appropriate on Count 2 of the Counterclaim. Koons seeks in Count 2 the amount Koons paid exceeding Nigh's estimate of the trade-in's lien. Koons asserts that Nigh has failed to pay the excess over the $7,500 estimate of the remaining lien on the Dodge Dakota. The lien on the Dakota was actually $8,899.73. (Field Aff. ¶ 12.) Nigh argues that this amount is incorrect because the pay-off through February 28, 2000 was $8,427.73. However, the loan was not paid off at that time. Because of Nigh's refusal to pay the amount over the $7,500 estimate, Koons could not pay off the lien in a timely manner. Nigh does not provide any evidence that the loan had not increased to $8,899.73 by the time Koons paid it off. The $8,899.73 pay-off exceeded Nigh's $7,500 estimate by $1,399.73. The $1,399.73 amount is increased because of Nigh's failure to pay Koons this amount. As a result of Nigh's delinquency, and Koons' resulting inability to pay off the trade-in loan in a timely manner, the Dakota's lien-holder repossessed the trade-in from the Koons lot. Koons had to pay $560 to retrieve the trade-in. Therefore, Koons suffered a total of $1,959.73 in damages. The Court grants summary judgment for Koons as to the full $1,959.73.

### N. *Counterclaim III*

Koons moves for summary judgment on its counterclaim that Nigh has failed to make installment payments for the purchase of the Truck and failed to pay off the additional $2,000 down payment that he owes on the promissory note. Nigh signed the contract to pay the $2,000 by March 23, 2000.

The Court holds that summary judgment for Koons on Count 3 of the Counterclaim is appropriate because there is no issue of fact remaining as to Nigh's obligation under the contract. Nigh signed a contract explicitly stating that he owes Koons a $6,000 down payment. Nigh has only paid $4,000. Therefore, Koons is entitled to summary judgment for the $2,000 still owed. Nigh has not contested that he has not made installment payments on the Truck. Therefore, summary judgment as to the installment payments is also appropriate.

Nigh argues that Koons did not provide any consideration for the loan and promissory note. However, as Nigh was to receive the benefit of the loan, Nigh had to provide consideration for the loan. He did this in the form of $4,000. Consequently, summary judgment is appropriate as to Count 3 of the Counterclaim.

### O. *Counterclaims IV and V*

██ The Court denies summary judgment as a matter of law on Koons' fraudulent misrepresentation (Count 4) and negligent misrepresentation (Count 5) counterclaims. In these claims, Koons alleges that Nigh made misrepresentations about his intent to pay the additional $2,000 down payment, that he would pay the amount exceeding the $7,500 estimate on the trade-in, that he would pay Koons the amount owed if Koons retrieved the repossessed trade-in, and that Nigh would immediately make all payments to Koons. The kinds of representations described by Koons as misrepresentations are not ac-

tionable; they are representations as to future events. As noted previously, statements as to future events cannot form the basis for misrepresentation claims. *See Patrick*, 369 S.E.2d at 164. Accordingly, the Court denies Koons' motion for summary judgment on Counts 4 and 5 of the Counterclaim.

Therefore, for the reasons stated above, Koons' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.

### *ORDER*

This matter is before the Court on Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment. The Court has treated Plaintiff Bradley Nigh's Reply as a motion for relief from the Court's April 20, 2001 Memorandum Opinion and Order (i.e., a motion for consideration) with respect to the grant of summary judgment on Nigh's breach of contract claim and Koons' promissory note and breach of contract counterclaims. *See* FED. R. CIV. P. 60(b) (setting forth the circumstances under which a court may provide relief from the court's judgment or order). Upon consideration of the Reply and Defendants' response to the Reply, the Court re-affirms its previous ruling and holds that Koons Buick Pontiac GMC, Inc. was entitled to summary judgment on the claims at issue.

Nigh argues in his Reply that the Court "overly generalized" when the Court held in its Memorandum Opinion that Chapter 46.2 of the Virginia Code does not provide consumers with a private right of action. The Court finds that the statement that "[Title 46.2, Chapter 15] of the Virginia Code does not create a private right of action" is, in fact, overly broad. *See Nigh*

*v. Koons Buick Pontiac, GMC, Inc.*, 143 F.Supp.2d 535 (E.D.Va. 2001) (Lee, J.) (citing *Hodges v. Koons*, C.A. No. 00–793–A, at 15 (E.D.Va. Jan. 3, 2000) (Brinkema, J.) (unpublished Opinion)). Although the majority of sections within Chapter 15 of Title 46.2 only create administrative remedies and set forth procedure, a few sections create rights, the protection of which can be pursued through private causes of action. *See, e.g.,* VA. CODE § 46.2–1527.3 (creating a right of payment out of a "recovery fund"); § 46.2–1529.1(C) (creating a right of rescission). Therefore, summary judgment on a § 46.2–1542 claim is not appropriate based on the contention that § 46.2–1542 does not create a private right of action. Nevertheless, summary judgment for Koons is still appropriate.

Nigh argues in his Reply that the Court erred in granting Koons' motion for summary judgment because the Court failed to consider Nigh's primary argument in support of his breach of contract claim. Nigh argues that he had a right to rescind the sales contract for the Truck as a result of Koons' failure to transfer the Truck's title within 30 days as required by Virginia Code § 46.2–1542. Nigh contends that Koons' and Defendant Household Automotive Finance Corporation's refusal to honor the rescission and refund all payments to Nigh constitutes a breach of contract.

Nigh's arguments fail because his dependence on Virginia Code § 46.2–1542 is misplaced. Nigh relies on § 46.2–1542 because Koons issued a temporary certificate of ownership when Nigh took possession of the Truck on February 4, 2001. (Pl. Statement of Material Facts Not in Dispute, Ex. F.) However, § 46.2–1542 applies to contexts when a licensed dealer sells a vehicle but is unable to deliver title to the vehicle because the title is lost or in another's possession. *See* VA. CODE § 46.2–

1542(A) (citing VA. CODE §§ 46.2–617, 46.2–628). That is not the context here. In this case, Koons possessed the Truck's title prior to any attempts to sell the Truck to Nigh. (Def. Mem. Pursuant to Court's May 1, 2001 Order, Ex. 1: Re-assignment Form (transferring title from the Truck's previous owner to Koons).) Therefore, § 46.2–1542 does not govern the agreement between the parties.

Notwithstanding, Koons did issue a Temporary Certificate in this case, which states that title of the vehicle had to be transferred within 30 days of the Certificate's issuance. (Pl. Statement of Facts, Ex. F.) However, Koons complied with the requirements of the Temporary Certificate and effectively transferred the permanent certificate of title before the Temporary Certificate expired. (Pl. Statement of Facts, Ex. K: Re–Assignment Form (transferring the Truck's title from Koons to Nigh).) The Temporary Certificate served to give Nigh temporary ownership pending financing for the Truck. When Koons was able to obtain financing, Koons filled out a Re–Assignment of Title form at the time Nigh signed the February 25, 2000 sales contract. (*Id.*) By drafting the re-assignment form and delivering it to Nigh when Nigh purchased the Truck, Koons fulfilled its transfer of title obligations under Virginia Code § 46 .2–628.[1]

Nigh argues erroneously that § 46.2–1542 governs in this case because Nigh confuses transfer of a vehicle's title with registration of a vehicle. Nigh argues repeatedly that Koons' failure to transfer title on the Truck in a timely manner is evidenced by the fact that Nigh's tags expired. (Pl. Reply at 10 ("The record is undisputed. Nigh did not

receive tags or a proper registration to the vehicle.").) However, registration work and transfer of title are separate and distinct. Transfer of title occurred upon completion of the Re–Assignment of Title form. *See* VA. CODE § 46.2–628. Nigh's tags expired because the DMV did not have the opportunity to register Nigh as the new owner and order a new license plate. The expiration of 30 days before the DMV documented the title transfer and registered the vehicle under Nigh's name does not trigger Nigh's right to rescind the contract. Under the language of the Temporary Certificate, Nigh would have had a right to rescission only had a transfer of title not occurred. (Pl. Statement of Facts, Ex. F.) For these reasons, the Court's April 20, 2001 ruling granting summary judgment for Koons on Nigh's breach of contract claim and on Koons' promissory estoppel and breach of contract counterclaims remains. Accordingly, it is hereby

ORDERED that Plaintiff Bradley Nigh's request for relief from the Court's judgment and Order is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

---

1. Virginia Code § 46.2–628 generally requires actual delivery of the certificate of title at the time of sale, but in this case Nigh contracted to give Koons power of attorney to arrange for tags and registration for the Truck. (Compl. Ex. D: Retail Installment Sales Contract) Therefore, Nigh left the document with the dealership.