Bryan Darris GRAHAM Plaintiff,

v.

RRR, LLC, t/a Rosenthal
Infiniti, Defendant.

No. CIV.A. 01–739–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 15, 2002.

**484**

Sheila E. Venable, Esquire, Alexandria, VA, for Plaintiff.

Richard Van Wert Adams, Esquire, Walton & Adams, McLean, VA, for Defendant.

### MEMORANDUM OPINION AND ORDER

·LEE, District Judge.

THIS MATTER is before the Court on Defendant RRR, LLC, t/a Rosenthal Infiniti's ("Rosenthal") motion for summary judgment and Plaintiff Bryan Graham's ("Graham") cross-motion for summary judgment. The case at bar involves an individual consumer's purchase of a car from a Virginia automobile dealership. The consumer, Plaintiff Graham, brought the instant suit claiming that Defendant Rosenthal had violated various provisions of the Federal Truth in Lending Act and the Virginia Consumer Protection Act, as well as common law fraud, in connection with the financing of the car purchase.

The issues presented are whether there exists a genuine issue of material fact concerning Graham's claims that (1) Rosenthal violated 15 U.S.C. § 1638(b)(1) of the Truth in Lending Act ("TILA") and Regulation Z, 12 C.F.R. § 226.17(a)(b), by failing to provide Graham with a complete set of disclosures in a form Graham could keep before consummation of the transaction (Count I); (2) Rosenthal violated TILA and Regulation Z, 12 C.F.R. § 226.17(c)(2)(i), by failing to mark disclosures of estimates about the terms of credit on the parties' contract as estimates; and (3) Rosenthal violated the Virginia Consumer Protection Act ("VCPA"), VA. CODE § 59.1-200(A)(5)(14), and committed common law fraud by allegedly persuading Graham to sign a blank contract by falsely promising to secure a lower interest rate at eight percent. (Counts III and IV).

For the reasons stated below and in open court on March 29, 2002, the Court holds that there does not exist a genuine issue of material fact regarding any of Graham's claims. First, section 1638(b)(1) requires the plaintiff to demonstrate actual damages and Graham has not produced any evidence whatsoever to support an actual damage claim. Even if the Court were to consider the TILA claim under Graham's belated § 1638(a) theory, Count I still fails because the second retail installment sale contract between the parties fully complies with the substantive TILA disclosure requirements. Second, the plain language of the disclosure of estimates provision of Regulation Z does not support Graham's interpretation that Rosenthal was required to mark estimates on the first retail installment sale contract. Further, the record indicates that the terms of the first retail sale installment contract were actual disclosures, not estimates.

Third, because Graham's claim under the VCPA arises from the same set of facts as those under TILA, the VCPA claim is preempted by TILA under Virginia law. With respect to the merits of Graham's VCPA claim, Count III fails be-

cause he cannot demonstrate any false misrepresentation on the part of Rosenthal. Similarly, Graham's fraud claim is meritless because he cannot demonstrate that Rosenthal made a false misrepresentation of fact. Graham's deposition conclusively demonstrates that Rosenthal, through its employee Paul Kelly, only told Graham that it would "see what it could do" about getting a lower rate. This statement is an opinion based upon a future event, not a false misrepresentation of a present or preexisting fact. Accordingly, summary judgment is granted in favor of Rosenthal on all four counts and Graham's cross-motion for summary judgment is denied.

## I.  BACKGROUND

Plaintiff Bryan Graham is a resident of Baltimore, Maryland. On January 23, 2001, Graham went to Rosenthal Infiniti in Tysons Corner, Virginia, to purchase an automobile. Prior to his trip to Rosenthal, Graham conducted research into buying a car that included visiting at least five other dealerships (Def.'s Ex. 1, Graham Dep. at 25–29, 41) ("Graham Dep."). Graham also researched into financing his car purchase. (Graham's Dep. at 18–21, 131). Graham took out a home equity loan for $30,000 in November 2000 for "car and other reasons" at an interest rate between 11 and 11.5%. (Graham Dep. at 20–22). Graham testified at his deposition that he did not originally intend to make financial arrangements through Rosenthal to finance the car because First Financial Credit Union had offered him a loan at 8% interest. (Graham Dep. at 43, 44, and 115). Graham concedes that the only documentation of the "offer" was an unsolicited coupon from First Financial. (Graham Dep. at 22). He does not remember whether the rate was for a car loan or home equity loan and admits that First Financial never committed to the loan. (Graham Dep. at 22–23, 115–117).

On January 23, 2001, Graham agreed to purchase the vehicle from Rosenthal. He drove the car off the lot on the same day. (Def.'s Ex. 1 at 156). Graham signed, *inter alia,* the following documents: (1) Credit Application (Def.'s Ex. 3); (2) Handwritten Buyer's Order (Def.'s Ex. 4); (3) Typed Buyer's Order (Def.'s Ex. 5); (4) "We owe" form (Def.'s Ex. 6); (5) Temporary Certificate of Title (Def.'s Ex. 7); (6) Title Application (Def.'s Ex. 11); and (7) Reassignment Agreement (Def.'s Ex. 12).

Graham also signed a retail installment sale contract ("RISC # 1") to finance the acquisition of the car at an interest rate of 12.5%. (Def.'s Ex. 13). In his deposition, Graham states that he signed RISC # 1 and was given a customer copy before he left. (Graham Dep. at 89–91). He also concedes that Rosenthal employee Paul Kelly went over RISC # 1 before Graham signed it and that the contract was completely filled out when he received it and signed it. (*Id.* at 91). Graham took the carbon copy home with him that night. (*Id.* at 93). Notwithstanding that he admits signing RISC # 1 after discussing it with Kelly, Graham contends that he did not agree to the 12.5% interest rate. (Graham Dep. at 92–92; Graham Aff. at 1). Graham maintains that he signed RISC # 1 with the understanding that Kelly would try to pursue a better rate, and if he could not, then Graham would go to his credit union. (Graham Dep. at 93). In his affidavit attached to Graham's Motion for Summary Judgment, Graham states that Rosenthal did not make any disclosures in a form he could keep before he signed the RISC # 1. (Graham Aff. at 1).

Graham contends that Kelly also asked him to sign a second retail installment sale contract that was blank. (Graham Dep. at 98; Graham Aff. at 1). Graham attests

that he signed the blank document based on a promise by Kelly that he would secure a loan at an interest rate of 8% or less. (Graham Aff. at 1). Graham also attests that Kelly retained the blank document and did not provide Graham with a copy. (Graham Dep. at 99–100). At his deposition, Graham testified that he told Kelly he could obtain an interest rate of 8% and that if Kelly could not match that rate, Graham would go with his credit union. (*Id.* at 83). Kelly responded that "he would see what he could do ... he told me [Graham] that he could not do anything other than [12%] that night because it was too late, but that he would get back with me." (*Id.* at 83–84). Graham also stated in his deposition that Kelly never used the 8% figure and that all Kelly told him was that "he would try to do better ... than [8%]." (*Id.* at 113). Graham also stated at his deposition that Kelly asked him to sign the blank document in the event that Kelly could acquire a lower rate and then Graham would not have to return to Virginia. (*Id.* at 86). Graham testified that he called Rosenthal on several occasions after January 23, 2001, to inquire about the lower interest rate but did not receive an answer. (*Id.* at 145–46). Instead, Rosenthal represented that an error had been made in calculating his taxes due under RISC # 1 that required correction. (*Id.*)

Graham believes that Rosenthal filled in the terms of the blank document and sent it to Chase Manhattan Bank. (*Id.* at 101). Chase financed Graham's purchase of the car pursuant to a second retail installment sale contract dated February 21, 2001 ("RISC # 2") at an interest rate of 11.65%. (Def.'s Ex. 14). According to Eduardo Betancourt, Director of Finance at Rosenthal, RISC # 2 was negotiated to correct

an error in the amount of taxes assessed to Graham because he is a Maryland, rather than Virginia resident. (Betancourt Aff. at 2). Adjusting for the tax changes allowed Rosenthal to provide Graham with the lower rate contracted in RISC # 2. (*Id.*) Betancourt attests that he believes Graham signed RISC # 2 on February 21, 2001. (*Id.*) RISC # 1 and RISC # 2 differ in the interest rate (12.5% versus 11.65%) and the total finance charges over the 60–month life of the loan ($8,691.48 versus $8,204.44), respectively. (*Compare* Def.'s Ex. 13, *with* Def.'s Ex. 14).

Graham claims that RISC # 2 is the blank contract that he signed on January 23, 2001, and that Rosenthal filled in and executed RISC # 2 with an 11.65% interest rate without his permission. (Graham Aff. at 2). Graham claims that he was unaware of the terms of RISC # 2 until he received the payment coupon book from Chase in late February 2001 (Graham Dep. at 138). After learning that the interest rate was 11.65% and not 8%, Graham did not return the car to Rosenthal. (*Id.* at 151). On March 26, 2001, Graham received a letter from First Financial Credit Union stating that he could get a car loan at 8% for 72 months. (*Id.* at 148). As of September 11, 2001, Graham still retained ownership of the car and had not refinanced the loan. (*Id.* 118–120).

Graham filed a four count complaint against Rosenthal and several other defendants in this Court on May 11, 2001. Graham amended the Complaint on July 13, 2001, naming Chase Manhattan Bank as a party, and filed a Second Amended Complaint on January 11, 2001.[1] Count I of the Second Amended Complaint alleges a

---

**1.** The other Defendants named in the earlier incarnations of Graham's Complaint were all dismissed except for Rosenthal. Notably, Graham's original Complaint did not contain an allegation concerning Kelly's representation of securing a lower interest rate or of Kelly inducing Graham to sign a blank contract on January 23, 2001.

violation of 15 U.S.C. § 1638(b)(1) of TILA and Regulation Z, 12 C.F.R. § 226.17(a)(b). Count II alleges a violation of TILA and Regulation Z, 12 C.F.R. § 226.17(c)(2)(i). Count III alleges a violation of the Virginia Consumer Protection Act, and Count IV alleges fraud under Virginia common law. Defendant Rosenthal moved for summary judgment on all four counts. Graham also filed a motion for summary judgment on the TILA claims. In his reply to Rosenthal's Opposition, Graham argued for summary judgment on the two state law claims.

## II. DISCUSSION

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "cannot create a triable issue of fact in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Hernandez v. Trawler Miss Vertie Mae, Inc.,* 187 F.3d 432, 438 (4th Cir.1999). Depending on the degree of inconsistency, a court has the discretion to disregard the conflicting affidavit in its entirety in favor of the previously sworn deposition testimony. *See Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 973 (4th Cir.1990).

### B. Analysis of Graham's Claims.

#### 1. Count I—Timely disclosure claim.

The Court grants summary judgment in Rosenthal's favor on Count I. Count I of the Second Amended Complaint alleges that Defendant Rosenthal violated 15 U.S.C. § 1638(b)(1) of TILA and Regulation Z, 12 C.F.R. § 226.17(a)(b), by failing to provide Graham with a complete set of disclosures in a form he could keep before consummation of the transaction. (2nd Am. Compl.¶ 26). In his opposition to summary judgment, Graham now argues that Rosenthal "violated 15 U.S.C. § 1638(a), **not** § 1638(b), and is liable for statutory damages, 15 U.S.C. § 1640(a)(2)(A)(i) under 15 U.S.C. § 1640(a)(4)." (Pl.'s Opp. at 3)(emphasis in original). Rosenthal is entitled to summary judgment on Count I under either § 1638(b) or § 1638(a).[2]

---

**2.** Judging from Graham's opposition to summary judgment and his own motion for summary judgment, it appears that he has dropped all claims with respect to RISC # 1 under Count I. Therefore, the Court will focus its analysis under Count I on RISC # 2.

■ First, Rosenthal is entitled to summary judgment on Count I under § 1638(b) because Graham cannot prove actual damages. As this Court previously held, "[t]he only remedy for failing to timely make disclosures is actual damages." *Nigh v. Koons,* 143 F.Supp.2d 535, 549 (E.D.Va.2001)(citing 15 U.S.C. § 1640(a)(4)); *Peters v. Jim Lupient Oldsmobile, Co.,* 220 F.3d 915, 916 (8th Cir. 2000)(same). Rosenthal's alleged "failure to provide timely disclosures falls within the purview of 15 U.S.C. § 1638(b), for which only actual damages are available." *Nigh,* 143 F.Supp.2d at 549.

Graham has not provided *any* evidence of actual damages. The only possible claim Graham has of actual damages is that he could have secured a lower rate of 8% but for signing RISC # 2 with an 11.5% interest (or RISC # 1 at 12%). But Graham provides *no evidence* that he could have acquired such a rate in January or February 2001. *See Peters,* 220 F.3d at 917 (granting summary judgment against plaintiff because plaintiff failed to provide evidence that he could have obtained lower interest rate). Graham's self-serving statement that he had a coupon offering a loan at 8% interest from the First Financial Credit Union is insufficient. Graham did not submit the coupon on summary judgment. Graham does not recall whether the coupon quoted a rate for a car loan or a home equity loan. Graham concedes that First Financial never committed to the loan. Under Rule 56, Graham must come forward with admissible evidence in the form of affidavits, documents, and the like, to combat a well-pled motion for summary judgment. He has failed to do so.

Even taken at face value, Graham's statement that he had a coupon from his credit union offering an 8% interest rate is insufficient to withstand summary judgment. Graham's receipt of a coupon in the mail offering an 8% rate does not demonstrate that he could have obtained such a rate. Consumers receive letters all the time from credit unions offering loans at low rates, but these mailings are not considered a binding obligation to provide the advertised rate. The consumer must first fill out an application and then obtain approval from the creditor for the loan at the desired rate. As Graham concedes, First Financial never agreed to provide him with a loan at 8%, or at any rate for that matter, in January or February 2001. The fact that Graham received a letter from First Financial stating that he could obtain a car loan at 8% on March 26, 2001, is irrelevant to the issue of damages concerning what rate Graham could have obtained in January or February of 2001.

■ Second, summary judgment is warranted on Count I on Graham's belated § 1638(a) claim as well. Graham now argues in his opposition to summary judgment that he is not addressing the timing of the disclosure concerning RISC # 2, rather he is attacking Defendant's "fail[ure] to disclose the terms of RISC # 2" under § 1638(a). (Pl.'s Opp. at 3). As a threshold matter, the Court finds that Graham has simply waited too long to plead this claim. *See Middlebrooks v. University of Maryland,* 166 F.3d 1209, 1999 WL 7860, *2 (4th Cir.1999)(unpublished)(affirming district court decision that "by failing to plead a claim of hostile environment before her opposition to Defendants' Motion for Summary Judgment, Plaintiff asserted her claim too late in the proceedings."). The federal pleading rules require that the complaint give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. The Second Amended Complaint does not make a single reference to § 1638(a). In contrast, it explicitly pleads a cause of

action under § 1638(b)(1). (*See* 2nd Am. Compl. ¶ 26) ("Rosenthal violated [TILA] and Regulation Z by failing to deliver complete set of disclosures in a form that plaintiff could keep prior to consummation of the transaction as required by 15 U.S.C. § 1638(b)(1)."). Discovery and argument has proceeded in this case on the presumption that Graham was alleging a violation under § 1638(b)(1). It appears that Graham has refashioned his TILA claim in an eleventh hour attempt to evade the actual damage requirement of § 1638(b). Allowing Graham to alter the substance of his claim less than two weeks before trial, would be manifestly unfair to the Defendant. In sum, Graham's claim under § 1638(a) is dismissed as untimely raised.

Putting aside the fatal infirmity of the untimeliness of Graham's § 1638(a) claim, he still fails to meet his burden on summary judgment. Under TILA, creditors must make specific disclosures when extending credit to customers. *See* 15 U.S.C. § 1638(a). These disclosures include the amount financed, itemization of the amount financed, the total number of payments, finance charges, the annual percentage rate, and the identity of the creditor. *See id.* A review of RISC # 2 indicates that the necessary terms and conditions required by § 1638(a) are present. (*See* Def.'s Ex. 14). All the relevant information is provided in a section entitled "Federal Truth-in Lending Disclosures." (*Id.*) Further, Graham concedes that he received disclosure of the terms in RISC # 2 in late February. (Graham Dep. at 138). In fact, he has complied with its terms and conditions ever since. (*Id.* at 151). At bottom, Graham's reformulation of his § 1638 claim has no merit

because § 1638(a) only covers whether the proper disclosures were made, not when, and the proper disclosures were indisputably made to Graham in RISC # 2.[3]

### 2. COUNT II—Failure to mark figures as estimates claim.

■ The Court grants summary judgment in favor of Rosenthal on Count II. Count II alleges that Rosenthal violated TILA and Regulation Z, 12 C.F.R. § 226.17(c)(2)(i), by failing to mark disclosures of estimates about the terms of credit on the contract as estimates. Regulation Z, in pertinent part, provides that:

(1) The disclosures shall reflect the terms of the legal obligation between the parties.

(2)(i) If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.

12 C.F.R. § 226.17(c)(1)-(2)(i). Graham claims that because Rosenthal treated the terms of RISC # 1 as an estimate, having promised to seek a lower interest rate, Rosenthal had an obligation under Regulation Z to mark RISC # 1 as an estimate. This argument fails for several reasons.

First, Graham provides no authority to support his conclusion that Regulation Z requires the disclosures to be marked as estimates on the contract. The plain language of Regulation Z does not require the disclosure to be marked or that it even be in writing. Regulation Z only requires

---

**3.** There remains an issue of fact as to whether Graham signed a blank RISC # 2 on January 23, 2001, or a filled-in RISC # 2 on February 21, 2001. However, since Graham fails to meet the essential element of damages under § 1638(b), whether Graham signed a blank contract on January 23, 2001, is not a *material* issue of fact necessary to disposition of the claim under Rule 56. *See Anderson*, 477 U.S. at 245, 106 S.Ct. 2505.

that the creditor "state clearly" that the disclosure is an estimate.

Second, the record does not support Graham's assertion that Rosenthal treated the terms of RISC # 1 as an estimate. In fact, everything in the record supports precisely the opposite conclusion. Graham and Rosenthal consummated their agreement on January 23, 2001, when Graham signed RISC # 1 along with several other sales documents and drove the car off the lot. RISC # 1 was an integral part of the purchasing agreement and the terms set forth in the contract were just that—terms, not estimates. The plain language of RISC # 1 provides that the parties did not consider the terms estimates. There is nothing in the record to support the notion that Rosenthal believed that the terms of RISC # 1 were estimates rather than an accurate disclosure of the terms of the contract. If the terms in RISC # 1 were "estimates," as Graham would have the Court conclude, under what authority could Graham have assumed possession of the car and driven it home? Finally, Graham has not articulated any damages arising from Rosenthal's alleged failure to comply with Regulation Z. Therefore, Rosenthal is entitled to summary judgment on Count II as a matter of law.

### 3. COUNT III—Virginia Consumer Protection Act.

The Court also grants summary judgment on Graham's Virginia Consumer Protection Act ("VCPA") claim under Count III. Count III alleges that Rosenthal violated the VCPA, VA. CODE § 59.1–200(A)(5)(14), by having Graham sign a blank contract and falsely promise to se-

cure an interest rate at 8%. On summary judgment, Graham has somewhat reworked his legal theory, and now argues that when Rosenthal executed RISC # 2, Defendant falsely represented to Chase that Graham had agreed to pay 11.65% for a car loan. (Pl.'s Reply at 6).

■ First, Graham's VCPA claim is preempted by TILA. The VCPA specifically states that it does not apply to aspects of consumer transactions regulated by federal consumer protection laws under Title 15 such as TILA. *See* VA. CODE § 59.1–199(C)("Nothing in this chapter shall apply to … [t]hose aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.*"); *Smith v. United States Credit Corp.*, 626 F.Supp. 102, 103 (E.D.Va.1985) ("According to the Virginia statutes, the [VCPA] does not apply to any aspect of a transaction authorized by state or federal law *or* regulated by the Federal Consumer Credit Protection Act."). Graham's VCPA claim arises from the same nucleus of facts as his TILA counts and is therefore preempted.[4]

■ Second, Graham's VCPA substantive claim is meritless. The VCPA "prohibits sellers from employing fraudulent and deceptive practices with consumers in connection with consumer purchase." *Nigh*, 143 F.Supp.2d at 553 (citing VA. CODE § 59.1–196, *et seq.*). To recover under the VCPA, Graham must "prove a false misrepresentation." *Nigh*, 143 F.Supp.2d at 554 (citing VA. CODE § 59.1–200(A)(14)). Graham testified at his deposition that Kelly did not promise that he could get Graham an 8% interest rate, rather Graham testified that Kelly said

---

4. Graham relies on *Jensen v. Ray Kim Ford, Inc.*, to support his proposition that the VCPA is not preempted by TILA. 920 F.2d 3 (7th Cir.1990)(finding that alleged forged retail installment contract was a nullity and therefore TILA did not apply). However, Graham's reliance is misplaced. Although *Jensen* deals with the somewhat analogous fact pattern of a forged retail installment contract, the case has nothing to do with the VCPA.

that he would see what he could do about getting a lower rate. (Graham Dep. at 83–84, 85, and 113).[5] Under Virginia law, a false misrepresentation must be of an existing fact, not a mere expression of an opinion. *See Mortarino v. Consultant Engineering Services Inc.*, 251 Va. 289, 467 S.E.2d 778, 781 (1999)("an expression of opinion cannot form the basis of an act in fraud."). Kelly's statement to the effect that he might be able to get a better rate expressed an opinion not a fact. In sum, Rosental is entitled to summary judgment as a matter of law on Count Three.

### 4.   COUNT IV—Fraud.

■ For similar reasons, the Court grants summary judgment against Graham on his fraud claim under Count IV. Under Virginia Law, the elements of actual fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994). A party must provide "clear, cogent and convincing" evidence to establish an action for actual fraud. *Patrick v. Summers*, 235 Va. 452, 369 S.E.2d 162, 164 (1988) (citations omitted). "As a general rule, 'fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated upon unfulfilled promises or statements as to future events.'" *Id.* at 164, 235 Va. 452 (citations omitted).

Graham appears to propose two legal theories based on fraud. In his Second Amended Complaint, Graham asserts that Rosenthal fraudulently induced him to sign a blank contract to his detriment by promising him that Rosenthal would secure a loan at a rate of eight percent. On sum-

mary judgment, Graham's legal theory has changed to arguing that Rosenthal committed fraud upon Chase by falsely alleging that Graham had agreed to pay the 11.65% interest set forth in the RISC # 2. (Pl.'s Opp'n at 3). Chase then relied on Rosenthal's misrepresentation and as a result Graham is obligated to pay 11.65% interest rather than the 8% he could allegedly get from his credit union. Neither formulation holds any water.

First, to the extent that Graham's legal theory has evolved to Rosenthal defrauding Chase, Graham's claim is summarily dismissed. Simply put, Graham has no standing to bring an action of fraud against Rosenthal on behalf of Chase.

■ Second, to the extent that Rosenthal's actions allegedly defrauded Graham, there is no evidence in the record of a false misrepresentation. Graham's deposition testimony conclusively proves that no one at Rosenthal, including Kelly, promised Graham a rate of eight percent. At most, Kelly only stated that he would try to get a better deal. It is well-settled that "fraud must relate to a present or preexisting fact, and cannot ordinarily be predicated on unfulfilled promises or statement of future events." *Patrick*, 369 S.E.2d at 164 (citations omitted). Graham's testimony reveals that Kelly's statements were opinions, predicated on a statement of a future event. In other words, there is no evidence of a false misrepresentation of a present or preexisting fact in this case and summary judgment on Graham's fraud claim is therefore appropriate.

### III.   CONCLUSION

For the foregoing reasons, it is hereby

---

**5.**   To the extent that Graham's deposition testimony contradicts his later affidavit, the Court adopts the deposition. *See Rohrbough*, 916 F.2d at 973.

ORDERED that the Defendant's motion for summary judgment is GRANTED on Plaintiff's Second Amended Complaint. It is further ORDERED that Plaintiff's cross-motion for summary judgment is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.