## CIRCUIT COURT OF THE CITY OF RICHMOND

Jason P. Carr
and Angela M. Carr

v.

Sheehy Ashland, Inc.,
t/a Sheehy Ford,
and Branch Banking
and Trust Co. of Va.,
t/a BB&T

March 24, 2004

Case No. LR-2742-3

BY JUDGE T. J. MARKOW

This case is before the court on Demurrer and Plea in Bar. The court heard oral argument on both demurrers on March 15, 2004. The Motion for Judgment alleges actual and constructive fraud, as well as violations of the Virginia Consumer Protection Act, against both Defendants.

The Carrs allege that they purchased a Ford Mustang from Defendant Sheehy in 2002. It is pleaded that, when the Carrs bought the Mustang, they specifically asked the salesmen at Sheehy whether the car had ever been in an accident, damaged, or had paintwork. The Carrs allege that the salesmen replied that the car had never been in an accident, damaged, or had paintwork. Additionally, it is pleaded that the Carrs asked the Finance Manager at Sheehy whether Sheehy received any of the financing costs associated with the financing of the Mustang. It is alleged that the Finance Manager denied that Sheehy received any part of these financing costs. The Carrs later learned that the Mustang had been in an accident and had paintwork and that Sheehy received a "yield spread premium" from the financing costs. Upon learning this information, the Plaintiffs have brought this action against both Sheehy and BB&T, the assignee of the financing contract between Sheehy and the Carrs.

Count I of the Motion for Judgment specifically alleges that both BB&T and Sheehy should be liable for actual and constructive fraud in their misrepresentation of the "best available" interest rate and that Sheehy should be liable for its misrepresentation regarding the accident history of the Mustang. Count II of the Motion for Judgment alleges that both BB&T and Sheehy should be liable under the Virginia Consumer Protection Act for deceiving the Carrs as to the actual interest rate and that Sheehy should be liable under the Virginia Consumer Protection Act for concealing the fact that the Mustang had been in an accident.

BB&T has demurred as to both counts. First, BB&T argues that Count II should be dismissed as against BB&T because the Virginia Consumer Protection Act specifically exempts banks and that there are not sufficient allegations that Sheehy acted as BB&T's agent or that BB&T had any control over Sheehy's representations regarding the interest rate. Second, BB&T argues that both counts should be dismissed as against BB&T because, while there is a holder clause in the finance agreement, this holder clause should not apply because the Carrs failed to allege that rescission or restitution was justified or that the Mustang had little or no value.

Sheehy has also demurred as to both counts. First, Sheehy argues that the actual fraud claim in Count I should be dismissed as against Sheehy because the Plaintiffs have failed to allege any intentional and knowing misrepresentation. Second, Sheehy argues that both counts should be dismissed as against Sheehy because the allegations contained therein amount to mere puffery and statements of future events, which cannot amount to deception or fraud under the Virginia Consumer Protection Act. Third, Sheehy argues that Count II should be dismissed as against Sheehy because the doctrine of *caveat emptor* would preclude the Carrs from recovering under the Virginia Consumer Protection Act. Sheehy has also filed a Plea in Bar, arguing that the doctrine of *caveat emptor* precludes the Plaintiff's cause of action and that Count II is pre-empted by the Federal Truth in Lending Act.

The court finds that both counts are properly pleaded as against BB&T.

BB&T is correct in arguing that Virginia Code § 59.1-199(D) specifically exempts banks from liability under the Virginia Consumer Protection Act. Additionally, the Plaintiffs have failed to allege facts sufficient to show that there was an agency relationship between Sheehy and BB&T or that BB&T had any control over the actions of Sheehy, such that BB&T would be vicariously liable for Sheehy's misrepresentations. The only allegation referring to this in the Motion for Judgment is contained in paragraph 18: "at all times relevant hereto, Sheehy Ford, on behalf of itself and as an agent for BB&T." Such a bald allegation is not sufficient to establish an agency relationship between the Defendants.

The court finds, however, that the Plaintiffs have adequately pleaded a cause of action against BB&T in Counts I and II, based on the holder clause in the financing agreement. The holder clause contained in the financing agreement states that:

> any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.

The plain meaning of this clause indicates that BB&T would be subject to derivative liability for any violations of law, including actual and constructive fraud and violations of the Virginia Consumer Protection Act, by Sheehy.

BB&T argues that the holder clause should not be read so broadly and, instead, it has been interpreted to require that a plaintiff allege that rescission or restitution is justified or that the purchased product has little or no value. This argument, however, is repugnant to the vast caselaw in Virginia regarding the interpretation of contracts.

When the language of a contract is unambiguous, the parties are constrained by the language within the contract. "Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Iron Constr. Co. v. First Nat'l Bank*, 205 Va. 841, 848, 140 S.E.2d. 629, 633 (1965). There is no question that the language within the financing agreement, while broad, is plain and unambiguous. For this reason, the court will enforce the plain meaning of the agreement. Because the holder clause makes BB&T legally liable for *all* claims the Carrs could assert against Sheehy, the court cannot dismiss either count as against BB&T and will, therefore, overrule BB&T's demurrer.

Both Counts I and II are also properly pleaded as to Sheehy.

First, the actual fraud claim is properly pleaded as against Sheehy because the Motion for Judgment adequately alleges that "Sheehy Ford's misrepresentations, silence, and concealment of the accident damage, and its misrepresentations and concealment of the yield spread premiums and buy rate, and its misrepresentation that the interest rate it gave them was the best available, were intentional and material, were deliberate omissions, they were intended to mislead, and to were [sic] intended to induce the plaintiffs" and that "Sheehy Ford knew or should have known that the vehicle had been damaged and repaired." Motion for Judgment && 53-54. Such allegations are sufficient to state a cause of action.

Second, the argument that the representations made to the Carrs regarding the "best interest rate available" and the condition of the Mustang cannot be fraudulent or deceptive because they are mere "puffery" is misplaced. The Motion for Judgment specifically alleges that Sheehy stated that the Mustang had never been repaired or had paintwork and that Sheehy did not receive any part of the finance cost. *Id.* at && 10, 12. These allegations are sufficient statements of fact, not regarding future events, in order to support both causes of action.

Last, the doctrine of *caveat emptor* is a factual question that cannot be considered by the court on demurrer. Whether the Plaintiffs breached their duty to investigate the Mustang before it was purchased is a factual determination that must be brought before the fact-finder and is not a proper argument for the demurrer stage. For these reasons, the court cannot dismiss either count as to Sheehy and will, therefore, overrule Sheehy's demurrer.

The court will also overrule Sheehy's Plea in Bar. For the reason discussed above, a defense involving the doctrine of *caveat emptor* is a factual determination, which must be presented to the fact-finder. Additionally, the court finds that the Federal Truth in Lending Act does not pre-empt the Virginia Consumer Protection Act in the present case.

The Virginia Consumer Protection Act specifically provides that it does not apply to "those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act." Va. Code Ann. § 59.1-199(C) (Michie 2001); *see also Graham v. RRR, L.L.C.*, 202 F. Supp. 2d 483, 490 (E.D. Va. 2002). This statement, however, does not rise to the level of a pre-emption, merely an exclusion. It is presumed that, unless Congress has clearly manifested an intention to totally regulate an area of law, there is no pre-emption of state law. *Cipollone v. Liggett Group*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992). "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it'." *Id.* (citations omitted). There has been no argument made by Sheehy that the Federal Truth in Lending Act so occupies the arena of lending money as to pre-empt all attempts by a state to also regulate it. In fact, the Plaintiffs assert that the Federal Truth in Lending Act does not regulate fraud in a consumer transaction, only the accuracy of information available to consumers.

Therefore, unless the Federal Truth in Lending Act contains a provision specifically in conflict with a provision of the Virginia Consumer Protection Act, each act may apply to different aspects of a financing agreement. Sheehy has not argued that there is any particular Federal Truth in Lending Act

8

provision which contradicts the Virginia Consumer Protection Act's requirements. For the above reasons, the court will overrule Sheehy's Plea in Bar.